# STATE OF MINNESOTA
## IN COURT OF APPEALS
### A14-0794

Melinda M. Binkley,
Trustee on behalf of the heirs and next of kin of Kirk T. Lloyd, II,
Respondent,

vs.

Allina Health System, et al.,
Appellants.

**Filed February 9, 2015**
**Reversed**
**Reyes, Judge**

Ramsey County District Court
File No. 62CV133798

David E. Wandling, Wandling Law Group, P.C., Minnetonka, Minnesota (for respondent)

Rebecca Egge Moos, Charles E. Lundberg, Jessica L. Klander, Bassford Remele, P.A., Minneapolis, Minnesota (for appellants)

Considered and decided by Johnson, Presiding Judge; Bjorkman, Judge; and Reyes, Judge.

## S Y L L A B U S

Decisions on whether to grant an individual's request for voluntary admission under Minn. Stat. § 253B.04, subd. 1 (2014), are immune from suit under Minn. Stat. § 253B.23, subd. 4 (2014).

**O P I N I O N**

**REYES**, Judge

This appeal arises out of a medical-negligence action brought on behalf of an individual who committed suicide shortly after being denied admission to appellants' inpatient mental-health-care unit. Appellants assign error to the district court's denial of summary judgment, arguing that immunity under Minn. Stat. § 253B.23, subd. 4, applies to appellants' good-faith decision to not admit a person to the inpatient mental-health-care unit. Because the good-faith decision to not admit the individual was made pursuant to the Minnesota Commitment and Treatment Act (CTA), we reverse.

## FACTS

Respondent Melinda Binkley is the mother of Kirk Lloyd, who committed suicide on May 13, 2010, at the age of 17. Three days prior, respondent entered Lloyd's bedroom and discovered her son wrapped in a blanket that had started on fire. While Lloyd initially assured respondent that it was an accident, he texted her the next day saying, "If you are wondering why there was a fire I was trying to kill myself." Respondent brought Lloyd to the emergency room at United Hospital (owned and operated by appellants Allina Health System and Allina Clinic Holdings, Ltd.) and requested that Lloyd be admitted. Terri Ulschmid, a licensed professional counselor, performed an initial mental-health assessment of Lloyd. Appellant Jeffrey Swanson, M.D., also performed a physical screening on Lloyd. Both agreed that he should be admitted to the mental-health-care unit, and Appellant Dr. Frances Go was designated as the "Admitting MD." Lloyd was initially presented to United's emergency room, where

he spent most of the day awaiting admission to United's inpatient mental-health-care unit. That afternoon, however, United staff determined that Lloyd would not be admitted to inpatient care.

Medical records indicate that Lloyd had been medically cleared when he left the emergency room, noting that there was "no need to admit at this time." Appellants discussed outpatient options with Lloyd, set up an appointment with his school therapist for the following day, and had Lloyd sign a discharge recommendation which included a statement indicating that Lloyd was not a danger to himself or anyone else. While respondent may dispute the exact motivation for denying Lloyd admission, the merits of the underlying negligence claim are not at issue on this appeal. [1] Thus, the only relevant fact is that appellants declined to admit Lloyd for voluntary inpatient care.

## ISSUE

Do the immunity provisions of the CTA apply to voluntary admissions?

## ANALYSIS

On an appeal from summary judgment, this court determines whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *Dahlin v. Kroening*, 796 N.W.2d 503, 504-05 (Minn. 2011). "When the district court grants a summary judgment based on its application of statutory language to the undisputed facts of a case . . . its conclusion is one of law and our review is de novo." *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn. 1998). Accordingly, we

---

[1] Respondent conceded at oral argument that good faith is not at issue.

3

review de novo the only issue on appeal—whether the immunity provisions of the CTA apply to voluntary admissions.

Appellants argue that United's decision to not admit Lloyd should be immune from suit under the CTA. The CTA outlines the procedures for voluntary admissions, involuntary commitments, and emergency holds of persons suffering from mental illness. Minn. Stat. §§ 253B.04, .05, .07–.10 (2014). The CTA provision governing voluntary admissions states that "[a]ny person 16 years of age or older may request to be admitted to a treatment facility as a voluntary patient for observation, evaluation, diagnosis, care and treatment without making formal written application." Minn. Stat. § 253B.04, subd. 1. The statute further provides that, when deciding whether to admit someone as a voluntary patient, the treatment facility must use clinical admission criteria consistent with the current inpatient admission standards and cannot arbitrarily refuse a patient. *Id*. Importantly, the CTA also contains an immunity provision, which states:

> All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual, pursuant to this chapter, are not subject to any civil or criminal liability under this chapter.

Minn. Stat. § 253B.23, subd. 4 (2014). Appellants contend that, because Lloyd was refused admission pursuant to the voluntary admission procedures of section 253B.04, the provisions of section 253B.23, subdivision 4, are thereby implicated and immunity should apply. We agree.

4

Respondent makes three general arguments for why immunity should not apply: (1) immunity only applies to involuntary commitments, not voluntary admissions; (2) policy considerations do not support a broad interpretation of the immunity provision; and (3) section 253B.04 does not apply to appellants' decision. None is persuasive.

1.    **Whether immunity applies to voluntary admissions**

Respondent argues that the immunity provisions of the CTA apply only to involuntary "commitments" and cannot be extended to voluntary "admissions." In support of this argument, respondent relies on the language of section 253B.23, subdivision 4, which grants immunity to those "who procedurally or physically assist in the *commitment* of any individual." Minn. Stat. § 253B.23, subd. 4 (emphasis added). Respondent references multiple areas in the CTA where the statute draws a clear distinction between voluntary "admissions" and involuntary "commitments," ultimately arguing that the term "commitment" cannot be interpreted as encompassing both voluntary and involuntary mental-health treatment.

We disagree. The plain language of the CTA immunity provision protects two groups of people: (1) those "who act pursuant to any provision of [chapter 253B]" or (2) those "who procedurally or physically assist in the commitment of any individual." *Id*. Appellants are not claiming immunity for assisting in Lloyd's commitment, but rather because they acted "pursuant to any provision of [chapter 253B]," namely, the voluntary admission procedures of section 253B.04. Contrary to respondent's argument, granting immunity here would not incorporate voluntary "admissions" under the term

5

"commitment"; rather, voluntary admissions qualify for immunity under the "any provision of this chapter" language of the statute.

**2.     Whether policy considerations preclude applying immunity to voluntary admissions**

Respondent argues that substantial policy considerations exist supporting her argument that immunity should not be applied to voluntary admissions.  Echoing the district court's opinion, respondent argues that immunity is meant to apply only to determinations which require health care providers to balance the liberties of an individual against the public's interest in preventing that individual from harming himself or others.  Respondent argues that such a determination occurs only during the involuntary commitment process and thus, granting immunity helps healthcare providers freely exercise their judgment without fear of litigation.[2]

While such policy considerations may exist, respondent's interpretation contradicts the plain language of the CTA immunity provision—that immunity is granted to those acting pursuant to "any provision" of the CTA.  "Our goal when interpreting statutory provisions is to ascertain and effectuate the intention of the legislature.  If the meaning of a statute is unambiguous, we interpret the statute's text according to its plain language.  If a statute is ambiguous, we apply other cannons of construction . . . ." *Brua*

---

[2] Additionally, respondent relies on dicta from the Minnesota Supreme Court's opinion in *Terwilliger v. Hennepin Cnty.*, which indicated a concern that "[s]tretching the scope of official immunity . . . would threaten to erect a shield against malpractice liability. . . ." 561 N.W.2d 909, 913 (Minn. 1997).  But the *Terwilliger* opinion is distinguishable from the case at hand.  *Terwilliger* did not address immunity under the CTA and was instead concerned with expanding the scope of common-law official immunity.  561 N.W.2d at 911-13.  The *Terwilliger* court's concerns are mitigated where, as here, the boundaries of immunity are clearly and unambiguously defined by statute.

6

*v. Minn. Joint Underwriting Ass'n*, 778 N.W.2d 294, 300 (Minn. 2010) (quotation and citations omitted). The district court did not conclude and the respondent does not argue that the immunity provision is ambiguous, and, in fact, this court has held that "[t]he language of the immunity provision is not ambiguous—it clearly grants immunity to any person acting in good faith pursuant to *any provision* of the CTA." *Losen v. Allina Health Sys.*, 767 N.W.2d 703, 709 (Minn. App. 2009), *review denied* (Minn. Sept. 29, 2009) (emphasis added). Because the immunity provision is unambiguous, respondent's policy considerations do not enter into the analysis. "We construe statutes to effect their essential purpose but will not disregard a statute's clear language to pursue the spirit of the law." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn. 2007).

Based on the plain language of this statute, we interpret immunity to apply to all persons who act: (1) in good faith; (2) upon actual knowledge or information thought by them to be reliable; and (3) pursuant to any provision of the CTA *or* who procedurally or physically assist in the commitment of any individual. Because the CTA contains a section detailing the procedure to follow when determining whether to grant a request for voluntary admission—section 253B.04, subdivision 1— appellants were acting "pursuant to any provision of [chapter 253B]" when they decided to refuse Lloyd's request for admittance to inpatient treatment. As such, the CTA immunity provision is applicable to their voluntary-admission decision.

**3.      Whether section 253B.04 applies to appellants' decision**

Respondent argues that Lloyd's denial of admission did not fall within the purview of section 253B.04 for three reasons. First, respondent argues that United staff did not

invoke the CTA because they did not incorporate the "commitment" process in their evaluation of Lloyd. Respondent cites no authority supporting the proposition that the CTA only applies when it is "invoked." Because Lloyd's admission falls squarely within section 253B.04, this argument is without merit.

Second, respondent argues that because Lloyd was a voluntary participant who gave consent, the CTA does not apply under section 253B.04, subdivision 1(c)(1), which states the following:

> (c)  A person who is voluntarily participating in treatment for a mental illness is not subject to civil commitment under this chapter if the person:
> (1) has given informed consent . . .; and
> (2) is participating in a medically appropriate course of treatment[.]

Minn. Stat. § 253B.04, subd. 1(c). This is a misreading of the statute. Subdivision 1(c) stands for the proposition that if an individual is voluntarily participating in a medically appropriate course of treatment and has given consent, that individual cannot be subject to civil commitment. *See id.* It does not mean, as respondent contends, that voluntary admissions are completely outside the purview of the CTA once consent is given.

Third, respondent argues that the CTA does not apply because this case involves a decision to discharge, rather than a refusal to admit. But here, he was not discharged. Rather, he was denied admission to the inpatient mental-health-care unit. The criteria for deciding whether to admit or deny a person to voluntary treatment is covered by the statute. *See* Minn. Stat. § 253B.04. Appellants declined Lloyd's request to be admitted to inpatient care. Because determinations regarding voluntary admissions are clearly

8

outlined in section 253B.04, appellants were acting "pursuant to any provision of [the CTA]" when they determined that Lloyd should be refused admission. Thus, the immunity provisions of section 253B.23 apply.

## D E C I S I O N

Because appellants acted pursuant to section 253B.04, subdivision 1, when they decided not to admit Lloyd for voluntary inpatient treatment, appellants are entitled to immunity under the plain language of section 253B.23. The district court thereby erred in denying appellant's summary-judgment motion.

**Reversed**.