STATE OF MINNESOTA

IN SUPREME COURT

A14-0794

Court of Appeals                                          Anderson, J.
                                          Concurring, Lillehaug, J.
                                   Took no part, Hudson, Chutich, JJ.

Melinda M. Binkley, Trustee
on behalf of the heirs and next
of kin of Kirk T. Lloyd, II,

        Appellant,

vs.                                                      Filed:  April 6, 2016
                                              Office of Appellate Courts

Allina Health System, et al.,

        Respondents.

_____

Patrick Stoneking, Robins Kaplan LLP, Minneapolis, Minnesota; and

David E. Wandling, Wandling Law Group, PC, Minnetonka, Minnesota, for appellant.

Rebecca Egge Moos, Jessica L. Klander, Bassford Remele, P.A., Minneapolis, Minnesota, for respondents.

Andrea B. Niesen, Charles A. Bird, Bird, Jacobsen & Stevens, PC, Rochester, Minnesota, for amicus curiae Minnesota Association for Justice.

_____

S Y L L A B U S

Minnesota Statutes § 253B.23, subd. 4 (2014), provides immunity to a medical-services provider that, in good faith, denies admission to a person seeking voluntary mental-health treatment under Minn. Stat. § 253B.04, subd. 1 (2014).

Affirmed in part, reversed in part, and remanded.

O P I N I O N

ANDERSON, Justice.

Appellant Melinda Binkley claims that Respondent Allina Health System and its staff negligently caused the death of her 17-year-old son, Kirk Lloyd, when they refused to admit him to an inpatient mental-health treatment facility. After some discovery, Respondents moved for summary judgment, arguing that they were entitled to immunity for their good-faith actions under the Minnesota Commitment and Treatment Act ("CTA"). The district court denied Respondents' motion for summary judgment, but the court of appeals reversed, concluding that Respondents are entitled to immunity. Because Minn. Stat. § 253B.23, subd. 4 (2014), grants immunity to the Respondents' good-faith actions in this case, we affirm in part, reverse in part, and remand for further proceedings.

During the summer of 2009, Lloyd began to experience suicidal thoughts and ideation. On or about July 25, 2009, Lloyd's mother, Binkley, intervened and had Lloyd transported to the emergency room. Lloyd received treatment through Respondent United Hospital ("United"). Respondent Frances Go, M.D., treated Lloyd at the emergency room and placed him under a 72-hour hold, as permitted by Minn. Stat. § 253B.05 (2014). In August 2009 Lloyd participated in the "United Partial Program" ("partial program"), an outpatient mental-health treatment program. Lloyd was discharged from the partial program on August 12, 2009.

Nine months later, on May 10, 2010, Lloyd wrapped himself in a blanket while sitting on his bed and set the blanket on fire. Lloyd suffered burns to his abdomen, but

2

initially claimed that the fire was an accident. The next day, Lloyd texted Binkley and told her that he had intentionally started the fire in an effort to harm himself and burn the house down. Lloyd also told Binkley that he wanted to go to United in order to get help and stop his pattern of self-harm.

Binkley and Lloyd arrived at the United emergency room on that same day at approximately 11:00 a.m. Binkley claims that she repeatedly requested that Lloyd be admitted to United's inpatient mental-health unit and that Lloyd consented to being admitted to the inpatient mental-health unit. Lloyd was examined by United staff, including Respondent Jeffrey G. Swanson, M.D. According to Binkley, sometime around 2:30 p.m., United staff informed Binkley and Lloyd that Lloyd would be admitted to United's inpatient mental-health unit. Lloyd then changed out of his normal clothes, put on scrubs, and ate lunch while he waited to be transferred to a room in United's inpatient mental-health ward.

At approximately 4:00 p.m., Binkley and Lloyd were informed that Lloyd would not be admitted to United's inpatient mental-health program and were further told that Dr. Go did not view Lloyd as "a good candidate" for the partial program because Lloyd failed to follow through with the partial program in August of 2009. After reminding Lloyd that he should attend scheduled meetings with a therapist and his school counselor over the next several days, United released Lloyd.

What caused United and its staff to discharge Lloyd rather than provide him with on-site mental-health treatment is disputed. Binkley claims that United's staff told her that United did not have space to accommodate Lloyd because there were other patients with

3

greater need for treatment. United, on the other hand, contends that it discharged Lloyd because there was "no need to admit at this time."

After he was released on May 11, Lloyd returned home with Binkley. Lloyd committed suicide either late in the evening of May 12 or early in the morning of May 13. On May 15, 2013, Binkley, acting as trustee, filed a medical-malpractice action against the Respondents on behalf of Lloyd's heirs and next of kin, alleging that Respondents' negligent failure to properly examine, evaluate, and provide services to Lloyd caused his death. On December 13, 2013, Respondents moved for summary judgment on the grounds that their actions were protected by statutory immunity and, in the alternative, that Binkley's expert affidavit failed to satisfy the requirements of Minn. Stat. § 145.682 (2014).

Respondents' motion for summary judgment was brought before key depositions were taken. Sometime after Respondents filed their motion for summary judgment and Binkley filed her response, but before the district court heard the motion, Binkley deposed Dr. Go. According to Binkley, Dr. Go's deposition testimony sharply contradicted United's previous narrative, as well as several notes in the medical records from Lloyd's visit to the emergency room. By contrast, during their depositions, other Allina staff, including Respondent Dr. Swanson, stood by the version of events presented in the medical records.

These discrepancies created questions about the reasons for Lloyd's discharge and Binkley brought a motion to amend the record for summary judgment in order to allow the district court to consider the new deposition testimony. But when Binkley's counsel failed

4

to appear at the hearing, the district court denied her motion to amend the record and considered Respondents' summary judgment motion without reference to Dr. Go's deposition testimony. Ultimately, the district court denied Respondents' summary judgment motion, concluding that the statutory immunity provision in Minn. Stat. § 253B.23, subd. 4, applied only to involuntary commitments, not voluntary admission decisions.[1]

Respondents filed an appeal of the district court's order denying summary judgement, which the court of appeals accepted pursuant to our decision in *Kastner v. Star Trails Ass'n*, 646 N.W.2d 235, 240 (Minn. 2002). The court of appeals reversed the decision to deny summary judgment, holding that the immunity provision found in Minn. Stat. § 253B.23 applies to voluntary admission decisions. *Binkley v. Allina Health Sys.*, 860 N.W.2d 707, 711 (Minn. App. 2015). We granted review.

I.

This case concerns the interpretation of Minn. Stat. § 253B.23, subd. 4, which is part of the CTA. Minn. Stat. §§ 253B.01-.24 (2014). The CTA provides a procedural framework for both voluntary and involuntary treatment of individuals with mental-health and other issues. The statutory scheme emphasizes medical evaluation and procedural protection for potential commitments, provides certain rights to patients at treatment

---

[1]     The district court also found that Binkley's expert affidavit complied with Minn. Stat. § 145.682. Respondents appealed the district court's determination, but later voluntarily dismissed that portion of the appeal. *See Binkley v. Allina Health Sys.*, No. A14-0794, Order at 2 (Minn. App. filed June 6, 2014).

facilities, and creates a state policy in favor of voluntary treatment. *See id.* The voluntary treatment section of the CTA, which applies to Lloyd's circumstances, prohibits the arbitrary denial of admission and requires that treatment facilities use "clinical admission criteria consistent with the current applicable inpatient admission standards established by the American Psychiatric Association or the American Academy of Child and Adolescent Psychiatry" when "making decisions regarding admissions." Minn. Stat. § 253B.04, subd. 1(a).

In addition to establishing procedural safeguards and certain substantive rights for patients and prospective patients, the CTA provides immunity to certain individuals and institutions involved in the admission, commitment, and treatment process. There are several immunity provisions that are specific to the sections in which they are found. *See, e.g.,* Minn. Stat. § 253B.04, subd. 1a(d) (providing immunity for mental-health providers that provide treatment to a voluntary patient based on consent provided by an authorized third party). The immunity provision at the heart of this case is found among the general provisions of the CTA. *See* Minn. Stat. § 253B.23, subd. 4. Subdivision 4 of section 253B.23 provides, in relevant part:

> All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual, pursuant to this chapter, are not subject to any civil or criminal liability under this chapter.

The issue in this case is whether Minn. Stat. § 253B.23, subd. 4, provides immunity to a mental-health provider that declines to provide treatment to a person seeking voluntary admission to a treatment facility under Minn. Stat. § 253B.04. Binkley contends that the

6

immunity provision should be read so that it only applies to the involuntary commitment process, while Respondents and the court of appeals conclude that the plain language of the statute clearly extends beyond the commitment process to decisions regarding voluntary treatment and admissions.[2]

## II.

## A.

Statutory interpretation presents a question of law that we review de novo. *Harms v. Oak Meadows*, 619 N.W.2d 201, 202 (Minn. 2000). The goal of all statutory interpretation is to "ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). When interpreting statutes, we "give words and phrases their plain and ordinary meaning." *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010). "When legislative intent is clear from the statute's plain and unambiguous language, we interpret the statute according to its plain meaning without resorting to other principles of statutory interpretation." *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 755 (Minn. 2013). If a statute is reasonably susceptible to more than one interpretation, it is ambiguous and we may resort to the canons of construction or legislative history in order to determine the intent of the Legislature. *Lietz v. N. States Power Co.*,

---

[2]    We recognize that there is a potential alternative reading of the statute, raised by amicus Minnesota Association for Justice, which results in applying immunity only to causes of action that arise under the CTA. Neither party adequately briefed this interpretation. Additionally, at oral argument, Binkley's counsel expressly disclaimed the interpretation advanced by amicus. Consequently, we do not reach this issue or express any opinion regarding whether the reading advanced by amicus is a valid way to interpret the statute.

718 N.W.2d 865, 870 (Minn. 2006). "[W]henever possible, no word, phrase or sentence should be deemed superfluous, void or insignificant" by our interpretation of a statute. *Owens v. Federated Mut. Implement & Hardware Ins. Co.*, 328 N.W.2d 162, 164 (Minn. 1983).

## B.

Even though the immunity provision in Minn. Stat. § 253B.23, subd. 4, has remained substantially unchanged since its original passage in 1967, *see* Act of May 22, 1967, ch. 638, § 21, 1967 Minn. Laws 1294, 1316 (codified at Minn. Stat. § 253A.21, subd. 2 (1967)),[3] we have never interpreted the provision in the context of a decision regarding voluntary admission.[4]  In short, Binkley argues that the immunity provision only applies to good-faith actions taken in the course of the involuntary commitment process.  Because Lloyd sought voluntary admission, he was never involved in the involuntary commitment

---

[3]    Chapter 253A was recodified as chapter 253B in 1982.  Act of Mar. 22, 1982, ch. 581, §24, 1982 Minn. Laws 1329, 1358 (codified as amended at Minn. Stat. §§ 253B.01-.23).

[4]    The closest we came to confronting the issue was likely *Enberg v. Bonde*, in which we appear to have held that Minn. Stat. § 253A.21, subd. 2 (1980), the predecessor to Minn. Stat. § 253B.23, subd. 4, provided immunity from common-law liability to physicians who imposed a 72-hour hold on a potentially dangerous patient.  331 N.W.2d 731, 734-35 (Minn. 1983).  *Enberg*'s usefulness here is questionable, however, because both the trial court and this court were focused on whether the defendants could be held liable under federal law.  *See id.*, at 732 n.2, 735-40.

In *Cairl v. State*, we held that decision-makers at a government-operated hospital were entitled to official immunity after a patient they discharged later started a fire.  323 N.W.2d 20, 24 (Minn. 1982). We did not address the applicability of statutory immunity under Minn. Stat. § 253B.23, subd. 4, and thus the relevance of *Cairl* is limited at best. Additionally, *Cairl* dealt with governmental employees and Binkley argues that this distinction also limits the applicability of the decision.

8

process and no commitment action, by the Respondents or otherwise, was ever taken. As a result, according to Binkley, Respondents are not entitled to immunity. Respondents, by contrast, argue that the immunity provision extends beyond the commitment process and applies to all good-faith actions taken pursuant to any provision of the CTA. The court of appeals agreed with Respondents' interpretation and concluded that the statute unambiguously grants immunity to two distinct groups: (1) persons who act in good faith pursuant to any provision of the CTA, and (2) persons who procedurally or physically assist in the commitment of an individual under the CTA. *Binkley*, 860 N.W.2d at 709.

The statutory text supports the position advocated by Respondents and endorsed by the court of appeals. The immunity provision reads, in relevant part:

> All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual, pursuant to this chapter, are not subject to any civil or criminal liability under this chapter.

Minn. Stat. § 253B.23, subd. 4. The phrase "in the commitment of any individual" clearly modifies the phrase "procedurally or physically assisting," but it does not modify the phrase "act pursuant to any provision of this chapter." *See Larson v. State*, 790 N.W.2d 700, 705 (Minn. 2010) ("[T]he grammatical rule of the last antecedent . . . instructs that a limiting phrase . . . ordinarily modifies only the noun or phrase that it immediately follows . . . ."). The word "or" separating "act pursuant to any provision of this chapter" and "procedurally or physically assist" makes it clear that the two phrases are meant to describe separate and distinct categories. We have held that the word "or" should be given its ordinary meaning as a disjunctive and that the use of the word "or" denotes the

9

Legislature's intent to separate one clause from the next.[5] When read in light of our precedent regarding the word "or," there is no textual basis for limiting the scope of the immunity provided in Minn. Stat. § 253B.23, subd. 4, to acts taken in the course of the commitment process in the manner that Binkley suggests.

Binkley argues that the phrase "in the commitment of any individual" is a limiting clause that "plainly modifies the terms that precede it," including the phrase "who act pursuant to any provision of this chapter." Essentially, Binkley believes the statute should read: "All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, *who act pursuant to any provision of this chapter in the commitment of any individual . . . .*" The first and most obvious problem with Binkley's reading is that it would require us to go against the weight of our precedent and read the "or" between "act pursuant to any provision of this chapter" and "who procedurally or physically assist" conjunctively. Indeed, during oral argument, Binkley's counsel conceded that if the "or" is read disjunctively, her interpretation fails.

Binkley contends, however, that we have read "or" conjunctively when the context required us to do so. *See Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 385 (Minn. 1999). In Binkley's view, the context of the CTA mandates that "or" be read conjunctively in this

---

[5]     *See Gassler v. State*, 787 N.W.2d 575, 585 (Minn. 2010); *Goldman v. Greenwood*, 748 N.W.2d 279, 283 (Minn. 2008); *State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000); *Berry v. Walker Roofing Co.*, 473 N.W.2d 312, 314 (Minn. 1991); *Aberle v. Faribault Fire Dep't Relief Ass'n*, 230 Minn. 353, 359, 41 N.W.2d 813, 817 (1950); *State v. Croatt*, 227 Minn. 185, 191, 34 N.W.2d 716, 720 (1948). *But see State v. Nelson*, 842 N.W.2d 433, 440-41 (Minn. 2014) (noting that when a proposition is phrased in the negative, the use of the word "or" may give rise to an interpretation that the "or" is conjunctive).

particular clause. Appellant makes several arguments in support of this position, none of which are persuasive.

First, Binkley stresses that reading "or" disjunctively would cause the "physically or procedurally assist" language of the clause to be rendered meaningless because anyone who physically or procedurally assisted in a commitment would be acting pursuant to a provision of the CTA. There are at least two problems with this argument. First, it is not entirely clear that any person who is procedurally or physically assisting with a commitment is acting pursuant to a provision of chapter 253B. Admittedly, the majority of individuals assisting in a commitment will be at least arguably acting pursuant to some provision of the CTA. But the CTA contains a number of directives for decision-makers and principal actors, and it is not always clear that every individual assisting a decision-maker or principal actor is necessarily acting pursuant to a provision of the CTA.[6]

Additionally, to the extent that Binkley is correct, her reading suffers from the same infirmity because reading "or" conjunctively will also create surplusage in the statute. If a person who is assisting with a commitment is always acting pursuant to a provision of the CTA, it necessarily follows that a person who is assisting with a commitment would be acting pursuant to a provision of the CTA *in the commitment of an individual*, which is the

---

[6]    For instance, Minn. Stat. § 253B.07, subd. 1(a), requires that a pre-petition screening team conduct an investigation regarding proposed patients before the designated agency files a petition for judicial commitment. Although the CTA contains several directives to the members of the screening team, it does not require anyone to provide statements or recommendations to the screening team. *See* Minn. Stat. § 253B.07, subd. 1. As a result, doctors who provide information or make a recommendation to a screening team might not be acting pursuant to a provision of the CTA and might not receive immunity unless they are deemed to be "procedurally assisting" with the commitment of an individual.

11

reading Binkley wishes us to apply to the statutory language. Binkley fails to explain how, under her reading, a person could be assisting with the commitment of an individual but not be acting pursuant to a provision of the CTA in the commitment of an individual. Because Binkley's argument does not even demonstrate that her reading is preferable, it certainly does not require us to go against the weight of our precedent and read "or" conjunctively.

Next, Binkley argues that reading "or" disjunctively and providing broad immunity to treatment providers under Minn. Stat. § 253B.23, subd. 4, would render five other immunity provisions in the CTA unnecessary. *See, e.g.*, Minn. Stat. § 253B.03, subd. 6(e) (providing immunity for third parties that provide consent for incompetent patients and immunity for treatment providers that provide treatment based on third-party consent). Three of the five provisions Binkley cites are not meaningless because they provide absolute immunity while Section 253B.23, subdivision 4 provides immunity for good-faith actions. *See* Minn. Stat. § 253B.03, subd. 6(e); Minn. Stat. § 253B.04, subd. 1a(d) (providing immunity for treatment providers that provide treatment based on written consent by a designated government agency); Minn. Stat. § 253B.092, subd. 9 (providing immunity for third parties that provide consent to neuroleptic medication for incompetent patients and immunity for treatment providers that administer neuroleptic medication based on third-party consent). These provisions would not be rendered irrelevant by the immunity found in section 253B.23, subdivision 4, because they provide more protection than immunity for good-faith actions.

12

We are similarly unpersuaded that the other two provisions Binkley cites are rendered meaningless by reading the "or" in section 253B.23, subdivision 4, disjunctively. *See* Minn. Stat. § 253B.03, subd. 6d(f) (providing immunity for treatment providers that make treatment decisions based on a "declaration of preferences" signed by a patient who was mentally competent at the time the declaration was signed); Minn. Stat. § 253B.097, subd. 6 (providing immunity for treatment facilities for the actions of their patients when a facility is engaged in "community-based treatment" and "follows accepted community standards of professional practice in the management, supervision, and treatment of the patient"). It is always difficult to project hypothetical cases in which an individual could obtain immunity under one provision, but not under another. Nonetheless, upon careful examination, we believe there are circumstances under which these immunity provisions could provide immunity that is different in scope or effect than the immunity provided by our reading of section 253B.23, subdivision 4.

But even if the immunity at issue here is arguably duplicative of a specific immunity provision elsewhere in the CTA, the Legislature's decision to provide an immunity framework that includes some overlap is, in the end, a question of policy. We are not free to disregard the text of section 253B.23, subdivision 4, simply because it creates some tension with other provisions of the CTA. By its plain terms, the immunity provision in section 253B.23, subdivision 4 applies to both persons seeking voluntary treatment and persons who are subject to commitment. Binkley's reading is not a reasonable interpretation of the statute. Section 253B.04, subdivision 4, unambiguously provides immunity to individuals acting in good faith pursuant to a provision of the CTA. As a

13

result, in this case, the Respondents' good-faith decision not to admit Lloyd under Minn. Stat. § 253B.04 is entitled to immunity.[7]

III.

Having concluded that the Respondents' good-faith decision to deny Lloyd admission to the inpatient mental health unit is entitled to immunity, we must consider whether that immunity entirely resolves this case. The court of appeals concluded that Respondents are entitled to summary judgment on all of Binkley's claims as a result of the immunity provision. We conclude, on the record before us, that it is not clear that Respondents are entitled to summary judgment on all claims.

Binkley's complaint contained numerous allegations regarding Respondents' negligence. While many of those allegations centered on Respondents' admission decision—which, if made in good faith, is entitled to immunity—others concerned the care, or lack thereof, the Respondents provided to Lloyd after he left the hospital. Although Respondents' good-faith admission decision is entitled to immunity, Respondents' counsel

---

[7]    Binkley makes a number of arguments based on policy and legislative history to support her contention that providing immunity in these circumstances would be inappropriate. These arguments may or may not have merit, but they are not issues entrusted to our court. *See* Minn. Stat. § 645.16 (stating that when a statute is "free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit"). Moreover, many of these arguments miss the point entirely. It is certainly true that the immunity provision at issue here will cause some deserving claimants to go uncompensated. But that is the very nature of immunity. If the Legislature intended all deserving claimants to be compensated every time a claim arose, the Legislature would not have created any immunity under the CTA. Instead, the Legislature not only chose to create broad immunity for good-faith actions, it further immunized other types of conduct as well. If Binkley disagrees with those policy choices, her argument is better directed to the executive and legislative branches, not here.

14

conceded at oral argument that decisions regarding what care to provide to Lloyd after he left the hospital are not entitled to immunity under Minn. Stat. § 253B.23, subd. 4. Therefore, we remand this case to the district court for further proceedings consistent with this opinion. On remand, the district court should evaluate the complaint and the record in order to determine whether Binkley can make out a case for liability in light of our holding that Respondents' good-faith admission decision is entitled to immunity.

Affirmed in part, reversed in part, and remanded.


HUDSON, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.


CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

C O N C U R R E N C E

LILLEHAUG, Justice (concurring).

Minnesota Statutes § 253B.23, subd. 4 (2014), part of the Minnesota Commitment and Treatment Act (CTA), provides, in relevant part:

> All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual, pursuant to this chapter, are not subject to any civil or criminal liability under this chapter.

The words "any civil . . . liability *under this chapter*" (emphasis added) seem to mean that defendants have immunity from causes of action created by the CTA or based on it (such as a claim of negligence per se). I see nothing in subdivision 4 that grants immunity from garden-variety professional negligence claims—those alleging breach of the standard of care in the diagnosis or treatment of mental illness.

We assume that statutes do not abrogate common law rights and remedies. "We have . . . long presumed that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication." *Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). This presumption typically is applied before we determine whether a statute is ambiguous. *See, e.g.*, *Dahlin v. Kroening*, 796 N.W.2d 503, 505-06 (Minn. 2011); *Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 377-78 (Minn. 1990). And "[w]e have held that statutorily created immunity should be construed narrowly." *Bol v. Cole*, 561 N.W.2d 143, 147 (Minn. 1997). Subdivision 4 does not contain an express abrogation of, or express immunity from, common-law claims of professional negligence.

Notwithstanding my reading of subdivision 4, I respectfully concur rather than dissent. As the court explains in footnote 2, the meaning of the phrase "civil . . . liability under this chapter" was not argued by either party and, at oral argument, appellant's counsel expressly declined to rely on it.[1] Fortunately, the opinion of the court does not foreclose such an argument and, therefore, the issue awaits another case.

---

[1] The issue first came to the court's attention through the helpful brief of amicus curiae Minnesota Association for Justice. *Cf.* Rule 37(1), Rules of the Supreme Court of the United States (stating that amicus briefs should "bring[] to the attention of the Court relevant matter not already brought to its attention by the parties" with the hope that it "may be of considerable help to the Court").