Laurie JACKSON and Douglas Sorenson as Court Appointed Guardians ON BEHALF OF Michael SORENSON, Respondents,

v.

OPTIONS RESIDENTIAL, INC., Appellant.

A16-1398

Court of Appeals of Minnesota.

Filed April 24, 2017

Donald R. McNeil, Elizabeth R. Gelderman, Stephen F. Buterin, Heley, Duncan & Melander, PLLP, Minneapolis, Minnesota (for respondents).

Stephen O. Plunkett, Peter L. Gregory, Bassford Remele, P.A., Minneapolis, Minnesota (for appellant).

Andrea B. Niesen, Bird, Jacobsen & Stevens, P.C., Rochester, Minnesota (for amicus curiae Minnesota Association for Justice).

Considered and decided by Cleary, Chief Judge; Ross, Judge; and Rodenberg, Judge.

## OPINION

ROSS, Judge

A resident at an adult foster-care facility operated by Options Residential, Inc., poured a pot of boiling water on another resident, Michael Sorenson, whose guardians then sued Options on his behalf, claiming negligence. The district court denied summary judgment to Options, rejecting its immunity defense under the Minnesota Commitment and Treatment Act. We hold that the statute's immunity protection against "civil or criminal liability under [the act]" refers to causes of action that are created by or are based on the act. Because Sorenson does not assert any claim so arising from the act, we affirm.

## FACTS

Michael Sorenson is an adult confined to a wheelchair because of a traumatic brain injury he suffered in a 1973 motorcycle accident. Sorenson relies on assistance for his basic needs, including meal preparation and personal hygiene. In 2011 Sorenson's siblings (who are also his court-appointed guardians) placed him in a Bloomington adult residential foster-care facility run by Options Residential, Inc. Options provides housing and care to individuals with brain injuries, mental health disorders, and substance abuse issues. Options developed a care plan to provide "supervision for [Sorenson] 24 hours a day, 7 days a week" and to keep Sorenson "within sight and sound at all times."

M.R., a schizophrenic woman, moved into the residence a month later. M.R. was in the process of being provisionally discharged from civil commitment. She has a history of aggressive conduct, including starting fires and throwing hot liquids on others.

Tensions rose between Sorenson and M.R. in May 2013. On May 26, Sorenson

teased M.R. about her body odor. M.R. reacted by breaking Sorenson's eyeglasses and spraying Lysol in his eyes. Options staff called the police, who recommended that Options change the living arrangements. Sorenson again teased M.R. about her hygiene on May 30. M.R. responded later that day, slapping Sorenson several times and injuring his face. Options staff again called the police, and paramedics took M.R. to the hospital for a 72-hour emergency hold. When the hold expired, M.R. returned to the residence.

On June 10, only one staff member was on duty in the residence caring for Sorenson, M.R., and another resident, while another staff member took the fourth resident on an errand. The attending staff member prepared a pizza for Sorenson, who sat in the living room in his wheelchair, and M.R. paced in and out of the kitchen. The third resident was also making dinner but had left the kitchen and a pot of boiling water on the stove. The staff member left the kitchen and went to the office. This left M.R. and Sorenson without supervision. That's when M.R. took the pot of hot water from the stove and poured it on Sorenson. Sorenson screamed. The staff member returned and saw steam rising from Sorenson's body. The staff member moved M.R. away from Sorenson, administered first aid, and called police. Paramedics took Sorenson to the hospital where he was diagnosed with severe burns covering a significant part of his body. He remained hospitalized nearly two months. He allegedly incurred $500,000 in medical costs for his care, which included surgical debridement and skin grafting.

Sorenson's guardians sued Options on Sorenson's behalf in June 2015, alleging claims of common-law negligence and also negligence based on violations of the Minnesota Vulnerable Adults Act, Minnesota Statutes section 626.557 (2016). Op-tions moved for summary judgment, relying on the immunity afforded by the Minnesota Commitment and Treatment Act (CTA), Minnesota Statutes section 253B.23, subdivision 4 (2016). The district court denied the motion. It held that Options is not immune from suit because the CTA does not protect Options for its treatment of Sorenson, an individual who is not subject to a civil commitment and therefore not covered by the CTA.

Options asks us to reverse in this interlocutory appeal.

## ISSUES

I. Does the caselaw interpreting Minnesota Statutes section 253B.23, subdivision 4, establish precedent that requires the district court to apply good-faith immunity to Sorensen's negligence claims?

II. Does the good-faith immunity afforded by Minnesota Statutes section 253B.23, subdivision 4, shield Options from liability for Sorensen's negligence claims?

## ANALYSIS

■ Options asks us to reverse the district court's denial of its summary judgment motion and to dismiss Sorenson's claims. We review a summary judgment decision de novo, determining whether genuine issues of material fact exist and whether the district court correctly applied the law. *Jorgensen v. Knutson*, 662 N.W.2d 893, 897 (Minn. 2003). We do so based on those facts that are either undisputed or disputed but construed in the light most favorable to the nonmoving party. *See Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014). This appeal requires us to interpret the CTA, a duty we undertake de novo. *See Binkley v. Allina Health Sys.*, 877 N.W.2d 547, 550 (Minn. 2016).

## I

 Options argues that the district court erred by refusing to apply the good-faith immunity afforded by the CTA to shield Options from liability for Sorenson's negligence claims. If the good-faith immunity statute does apply, it "provides complete immunity from suit, not simply a defense to liability." *Mjolsness v. Riley*, 524 N.W.2d 528, 530 (Minn. App. 1994). We look to the immunity provision itself:

> All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act pursuant to any provision of this chapter or who procedurally or physically assist in the commitment of any individual, pursuant to this chapter, are not subject to any civil or criminal liability under this chapter.

Minn. Stat. § 253B.23, subd. 4.

The operative language "are not subject to any civil or criminal liability under this chapter" invites the question: What does "under this chapter" mean? Sorenson would have us conclude that "under this chapter" refers to *liability* that arises from the CTA chapter. And Options would have us conclude that "under this chapter" merely describes the statutory source of the *immunity*; that is, the phrase does nothing to define or limit the nature or type of the liability. But we cannot decide the issue, Options argues, because it has already been decided. It maintains specifically that precedent requires us to reverse the district court because caselaw establishes that the district court must apply the good-faith immunity afforded by section 253B.23, subdivision 4, to negligence claims of any variety. We do not think the cited caselaw supports that conclusion.

 Of course we are bound by precedent established in the supreme court's opinions and our own published opinions. *See State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010), *review denied* (Minn. Sept. 21, 2010); *Brainerd Daily Dispatch v. Dehen*, 693 N.W.2d 435, 439–40 (Minn. App. 2005), *review denied* (Minn. June 14, 2005). But the opinions that Options cites merely assume, without deciding, what claims CTA immunity reaches. *See Losen v. Allina Health Sys.*, 767 N.W.2d 703, 704, 710–11 (Minn. App. 2009) (affirming district court's grant of statutory immunity to preclude common-law claim of medical negligence), *review denied* (Minn. Sept. 29, 2009); *Mjolsness*, 524 N.W.2d at 530 (affirming district court's decision to grant immunity from claims of legal malpractice, false imprisonment, and malicious prosecution). These do not appear to be binding answers to the question before us now.

 We determine what is binding in an opinion in light of the issues actually presented and resolved. *See Skelly Oil Co. v. Comm'r of Taxation*, 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964). A judicial opinion that renders a conclusion merely implicating an issue without any legal justification or analysis does not prevent courts from deciding the issue. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *Fletcher v. Scott*, 201 Minn. 609, 613, 277 N.W. 270, 272 (1938) ("The rule of stare decisis is never properly invoked unless in the decision put forward as precedent the judicial mind has been applied to and passed upon the precise question."). It is possible for issues to "merely lurk in the record" without either being brought to a court's attention or decided directly, and these lurking issues "are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511, 45 S.Ct. 148, 149, 69 L.Ed. 411 (1925).

The question of how far a court can extend subdivision 4 immunity "merely

lurk[ed] in the record" in *Losen* and *Mjolsness*. Options acknowledged at oral argument that no case involving good-faith immunity under subdivision 4 has construed the statute's phrase, "under this chapter." And contrary to the holding that Options seeks, in the most recent case that assumed broad immunity—beyond a CTA-based cause of action—the supreme court acknowledged that subdivision 4 might instead be read to restrict good-faith immunity only to causes of action that arise under the CTA. *Binkley*, 877 N.W.2d at 550 n.2. The *Binkley* court expressly declined to decide the issue because the question arose only in an amicus curiae brief. *Id.*; *see also League of Women Voters Minn. v. Ritchie*, 819 N.W.2d 636, 645 n.7 (Minn. 2012) ("Generally, we do not decide issues raised by an amicus that are not raised by the litigants themselves."). Even while the *Binkley* court recognized that the statute's immunity reach may be an open question, the concurring opinion anticipated the answer, offering, "The words 'any civil … liability *under this chapter*' seem to mean that defendants have immunity from causes of action created by the CTA or based on it. . . ." *Binkley*, 877 N.W.2d at 555 (Lillehaug, J., concurring) (alteration in *Binkley*).

Options insists that, because broad immunity has been assumed in prior supreme court and court of appeals cases, this court now lacks the power to hold that the immunity afforded in section 253B.23, subdivision 4, is limited to claims arising from the CTA. It argues, "[T]hat authority belongs [only] to the Minnesota Legislature and the Minnesota Supreme Court." We cannot agree. In following its constitutional authority to establish this court with "appellate jurisdiction over all courts, except the supreme court," Minn. Const. art. VI, § 2, the legislature recognized that this court's opinions would be officially published and precedential when, among other circumstances, the opinion "establish[es] a new rule of law" or "overrule[s] a previous Court of Appeals' decision not reviewed by the Supreme Court." Minn. Stat. § 480A.08, subd. 3(c) (2016). Because the supreme court has recognized that the question presented by Options's appeal is a legal question that remains unanswered, our answer necessarily will "establish a new rule of law." We therefore not only have the authority to answer the question; because the answer is necessary to· decide this appeal, we have the constitutional and statutory duty to answer the question.

In sum, despite assuming a broad reach of immunity, Minnesota appellate courts have never actually answered whether the phrase "under this chapter" in subdivision 4 limits the immunity provided in the subdivision to claims arising under the chapter. We turn to that question.

## II

Answering the question requires us to interpret the statute, and this in turn requires us to carry out the legislature's intent. *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). We discern legislative intent first by looking at the statute's words in context, and if they are clear and unambiguous, we apply the plain meaning of those words and use no other tool of statutory construction. *Premier Bank v. Becker Dev., LLC*, 785 N.W.2d 753, 759 (Minn. 2010).

Our look into legislative intent is particularly scrupulous here, because Options asks us to construe the statute as a broad shield from liability for common-law negligence, and we so construe statutes only when it is clear the legislature intended that result. Minnesota adopted the common law early on. *State v. Pulle*, 12 Minn. 164, 170–71 (1866). And although the legislature can curtail the common law, *Cong-*

*don v. Congdon,* 160 Minn. 343, 361–62, 200 N.W. 76, 82 (1924), courts have "long presumed that statutes are consistent with the common law, and if a statute abrogates the common law, the abrogation must be by express wording or necessary implication." *Brekke v. THM Biomedical, Inc.,* 683 N.W.2d 771, 776 (Minn. 2004). We therefore strictly construe statutory immunity from common-law remedies. *J.E.B. v. Danks,* 785 N.W.2d 741, 752 (Minn. 2010). We examine the immunity language in this case through that lens.

This again is the relevant language: "All persons acting in good faith ... are not subject to any civil or criminal liability *under this chapter.*" Minn. Stat. § 253B.23, subd. 4 (emphasis added). Sorenson would have us paraphrase "liability under this chapter" to say *liability that arises under this chapter.* Options proposes essentially that we paraphrase the sentence to mean, *it is under this chapter that all persons acting in good faith are not subject to any civil or criminal liability.*

Only Sorenson's position is reasonable, even if we were not required to strictly construe immunity provisions. The syntax and substance of the sentence require that, contrary to Options's contention, "under this chapter" must have some defining effect. A prepositional phrase usually modifies a preceding subject, and the preposition shows the relationship between that subject and the object of the preposition. *The Chicago Manual of Style* 5.162, .167, .168 (15th ed. 2003); *see also* Minn. Stat. § 645.08(1) (2016) (directing courts to construe words and phrases according to the rules of grammar); *City of Oronoco v. Fitzpatrick Real Estate, LLC,* 883 N.W.2d 592, 596 (Minn. 2016) ("In particular, the last antecedent canon instructs that a limiting phrase ... ordinarily modifies only the noun or phrase that it immediately follows...." (quotation omitted)). That "un-der" immediately connects "liability" and "this chapter" implies the modifying relationship between "liability" and "this chapter." If, on the other hand, Options's position were correct, the phrase "under this chapter" would constitute surplusage—verbiage having virtually no substance. Options overlooks the maxim that "[a] statute should be interpreted, whenever possible, to give effect to all of its provisions; no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn. 2000) (quotation omitted).

We also observe that subdivision 4 includes multiple instances where a similar prepositional phrase including "this chapter" (specifically, *"pursuant to* this chapter") serves to modify other words in the subdivision. This is helpful because we consider how words are used in their context. *Chiodo v. Bd. of Educ. of Special Sch. Dist. No. 1,* 298 Minn. 380, 382, 215 N.W.2d 806, 808 (1974). For instance, the phrase "pursuant to any provision of this chapter" modifies the preceding phrase "All persons acting in good faith, upon either actual knowledge or information thought by them to be reliable, who act...." And the phrase "pursuant to this chapter" modifies the preceding phrase "All persons acting in good faith ... who procedurally or physically assist in the commitment of any individual."

And in the broader context of the phrase's use in the Minnesota Statutes elsewhere, we add that the legislature frequently employs the phrase "under this chapter" in immunity provisions, and when it does so, the phrase is never superfluous. Instead, it routinely defines and limits the scope or type of conduct immunized. For example, the Minnesota Insurance Guaranty Association Act immunizes certain insurers and others for actions undertaken

"in the performance of *their powers and duties under this chapter.*" Minn. Stat. § 60C.19 (2016) (emphasis added); *see also* Minn. Stat. §§ 62J.06 (2016) (immunizing members of the Health Technology Advisory Committee for any good-faith act "within the scope of *the member's responsibilities under this chapter*") (emphasis added), 146A.04, subd. 2 (2016) (immunizing health-department employees "for any actions, transactions, or publications *in the execution of, or relating to, their duties under this chapter*") (emphasis added), 336A.10(a) (2016) (immunizing governmental employees responding to requests for agricultural lien statements "from liability as a result of *errors or omissions in information supplied under this chapter*") (emphasis added); *and see* Minn. Stat. §§ 60G.08, 147A.15, subd. 2, 148B.08, subd. 2, 151.073, subd. 2, 153.25, subd. 2(a) (2016) (providing immunity to certain actors restrictively "under this chapter"). In this limited survey, we have found no immunity statute in which the legislature uses the phrase "under this chapter" without defining or describing the scope of the immunized conduct. Options gives us no reason to conclude that section 253B.23 is the sole exception.

■ Based on both its syntax and context, subdivision 4's good-faith immunity provision therefore insulates a qualifying defendant from civil or criminal liability that arises "under this chapter." "This chapter" refers to the CTA exclusively. Minn. Stat. §§ 253B.01–.24 (2016). We hold that the contested language of subdivision 4 is unambiguous and that it limits good-faith immunity to causes of action that are created by the CTA or that are based on it.

■ Applying that holding here leads us to sustain the district court's conclusion that Options is not immune from liability for Sorenson's negligence claims.

The CTA establishes the official procedure and duties associated with voluntary and involuntary civil commitment and treatment of individuals with mental health problems, and it establishes certain rights for the subjects of that treatment. *Binkley*, 877 N.W.2d at 549–50. Sorenson's injuries did not result from anyone's failure to satisfy an obligation imposed by the act. His complaint implicates none of the duties or rights established by the act. It includes no allegation requiring the district court to interpret or apply any provision of the act. Sorenson was not even civilly committed under the act, and, although M.R. was so committed, the act does not itself direct the state to regulate the conduct of committed persons or to require officials to protect others from harm that committed persons might cause. The act therefore does not form any ingredient of Sorenson's allegations, nor does it lead one to anticipate that any part of the act would ever become an issue in deciding either liability or damages.

Because Sorenson ascribes liability to Options for acts or omissions entirely unrelated to any provision of the CTA, the alleged liability is not "under" the CTA, and the immunity of section 253B.23 does not foreclose Sorenson's negligence claims. The district court correctly held that Options cannot invoke good-faith immunity under subdivision 4 to shield it from liability.

### DECISION

We reject Options's argument that we lack authority to interpret Minnesota Statutes section 253B.23, subdivision 4, to decide Options's appeal. That statute unambiguously limits immunity to alleged liability under the CTA and does not foreclose Sorenson's negligence claims, which

were neither created by the CTA nor based on it.

**Affirmed.**