**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1716**

State of Minnesota,
Appellant,

vs.

Somsalao Thonesavanh,
Respondent.

**Filed June 6, 2016
Affirmed
Toussaint, Judge***

Nobles County District Court
File No. 53-CR-14-1213

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kathleen A. Kusz, Nobles County Attorney, Matt O. Loeffler, Assistant County Attorney, Worthington, Minnesota (for appellant)

Mark D. Nyvold, Fridley, Minnesota (for respondent)

Considered and decided by Jesson, Presiding Judge; Reilly, Judge; and Toussaint, Judge.

**S Y L L A B U S**

A person does not "take" a motor vehicle under Minnesota Statutes section 609.52, subdivision 2(a)(17) (2014), unless the person participates in the movement of the motor vehicle.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

**TOUSSAINT**, Judge

In this pretrial prosecution appeal, appellant State of Minnesota argues that the district court erred by granting respondent defendant's motion to dismiss the charge of theft of a motor vehicle for lack of probable cause. The state argues that the district court's decision was based on an erroneous interpretation of Minn. Stat. § 609.52, subd. 2(a)(17). We affirm.

## FACTS

At approximately 4:51 a.m. on December 29, 2014, J.V. called the local law enforcement dispatch center to report that an individual he did not know was banging on the door of his house. In response to the call, Officer Alex Tokar of the Worthington Police Department was dispatched to the residence. Upon arriving at the residence, Officer Tokar noticed a motor vehicle parked in the driveway of the residence with its engine running and its reverse lights illuminated. The vehicle was not moving. J.V. exited his residence, informed Officer Tokar that he was the individual who had called the police, and told Officer Tokar that there was a man sitting in his vehicle.

Officer Tokar observed an individual, later identified as respondent Somsalao Thonesavanh, sitting in the driver's seat of the vehicle. Thonesavanh refused to exit the vehicle when Officer Tokar instructed him to do so. Officer Tokar instructed Thonesavanh to exit the vehicle a second time and attempted to open the vehicle door, but it was locked. When Thonesavanh eventually unlocked the door and exited the vehicle, Officer Tokar and another officer who had arrived at the residence observed that the vehicle's rear reverse

2

lights were no longer illuminated. The officers placed Thonesavanh under arrest and spoke to J.V. further about the situation.

J.V. told Officer Tokar that he had started his vehicle in his driveway to warm it up before he had to leave for work. J.V. stated that he was getting ready for work when he heard someone banging on his front door. J.V. looked out the window and saw Thonesavanh, whom he did not know, so he did not answer the door. When J.V. walked outside to leave for work, he saw Thonesavanh seated in the driver's seat of his vehicle and called the police. J.V. noticed that papers within his vehicle had been moved around by Thonesavanh. J.V. told Officer Tokar that he had not given Thonesavanh permission to sit in his vehicle.

Thonesavanh was charged with theft of a motor vehicle along with other crimes. At a contested omnibus hearing, Thonesavanh challenged probable cause for the theft of a motor vehicle charge, and the district court dismissed the charge for lack of probable cause. The state appealed.

## ISSUE

Did the district court err as a matter of law in its interpretation of the term "takes" as it is used in Minn. Stat. § 609.52, subd. 2(a)(17)?

## ANALYSIS

The state challenges the district court's dismissal of the theft of a motor vehicle charge for lack of probable cause, arguing that the district court erred in its interpretation of the term "takes" in Minn. Stat. § 609.52, subd. 2(a)(17). "A dismissal for lack of probable cause is appealable if it is based on a legal determination such as interpretation of

3

a statute." *State v. Larkin*, 620 N.W.2d 335, 336 (Minn. App. 2001). As with other legal determinations, dismissal for lack of probable cause based on statutory interpretation is reviewed de novo. *Id.*

When appealing a pretrial order, the state must show that the district court's error will have a critical impact on its ability to prosecute the case. *State v. Zais*, 805 N.W.2d 32, 35–36 (Minn. 2011). Dismissal of a charge, even when other charges remain, has a critical impact on the prosecution's case. *See State v. Underdahl*, 767 N.W.2d 677, 684 (Minn. 2009). Because the district court dismissed the theft of a motor vehicle charge, the district court's order had a critical impact on the state's ability to prosecute Thonesavanh.

Next, we must determine whether the district court's dismissal of the theft of a motor vehicle charge was erroneous. Under Minn. Stat. § 609.52, subd. 2(a)(17), a person who "takes or drives a motor vehicle without the consent of the owner or an authorized agent of the owner, knowing or having reason to know that the owner or an authorized agent of the owner did not give consent" commits theft. In dismissing the theft of a motor vehicle charge for lack of probable cause, the district court concluded that the term "takes" as it is used in the theft of a motor vehicle statute is ambiguous and determined that "takes" requires that the defendant "exercised independent, absolute control over the property involved, even if for only a short time" and incorporates the common law requirement that the defendant was involved in "movement of the property." Because the state produced no evidence that Thonesavanh participated in the movement of J.V.'s motor vehicle, the district court dismissed the theft of a motor vehicle charge for lack of probable cause.

4

The parties dispute the meaning of the word "takes" in the statute. The goal of statutory interpretation is to ascertain the legislature's intent. *State v. Rick*, 835 N.W.2d 478, 482 (Minn. 2013). Courts will interpret a statute according to its plain meaning without considering the canons of statutory construction "[i]f the [l]egislature's intent is clear from the statute's plain and unambiguous language." *Id.* "But, if a statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous and [courts] may consider the canons of statutory construction to ascertain its meaning." *Id.*

The term "takes" is not defined in the statute. *See* Minn. Stat. § 609.52, subd. 1 (2014). To determine the plain and ordinary meaning of an undefined term, we may turn to dictionary definitions. *See Rick*, 835 N.W.2d at 483–85 (consulting two dictionaries to determine whether disputed term had clear meaning). The term "take" has many definitions, as demonstrated by the fact that the Compact Oxford English Dictionary dedicates 16 pages to defining it. XVII *The Oxford English Dictionary* 557–73 (2d ed. 1991). The American Heritage Dictionary of the English Language also contains many definitions of the term "take," including "[t]o remove or cause to be absent" and "[t]o get into one's hands, control, or possession." *The American Heritage Dictionary of the English Language* 1774–75 (5th ed. 2011). The American Heritage definitions demonstrate the ambiguity of the term "takes" under Minn. Stat. § 609.52, subd. 2(a)(17), as movement seems to be required by the first definition, but not by the second. Because these definitions demonstrate that the term "takes" in the context of Minn. Stat. § 609.52, subd. 2(a)(17), is subject to more than one reasonable interpretation, we conclude that the statute is ambiguous.

5

"When the court is faced with an ambiguous criminal statute, the ambiguity should be resolved in favor of the criminal defendant in the interest of lenity." *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011). A court may also turn to the canons of statutory construction when a statute is ambiguous in order to ascertain the statute's meaning. *Id.* at 611. One way to determine what a section of a statute means is to look at related sections of the statute and related statutes that use the same language. *State v. Banken*, 690 N.W.2d 367, 371 (Minn. App. 2004), *review denied* (Minn. Mar. 29, 2005).

The term "takes" is used multiple times in section 609.52, subdivision 2(a) (2014), with regard to theft of movable personal property. For instance, a person who "intentionally and without claim of right *takes* . . . movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property" is guilty of theft. Minn. Stat. § 609.52, subd. 2(a)(1) (emphasis added). Likewise, a person who "intentionally, and without claim of right, *takes* motor fuel from a retailer without the retailer's consent and with intent to deprive the retailer permanently of possession of the fuel" is guilty of theft. Minn. Stat. § 609.52, subd. 2(a)(18) (emphasis added). Moreover, another theft statute provides that a person who "intentionally and without claim of right *takes* mail from a mail carrier" or "intentionally and without claim of right *takes* mail, or the contents of mail, that has been left for collection on or near a mail depository" is guilty of mail theft. Minn. Stat. § 609.529, subd. 2(2) (emphasis added), (5) (emphasis added) (2014). This consistent use of the term "takes" in these statutes, which involve theft of movable personal property, suggests that the term "takes" does not merely require that a person obtain control over the personal property, but requires

6

that a person physically remove the personal property in order to be guilty of a theft of movable property crime.

This conclusion is also supported by former law on the subject of theft of a motor vehicle, which may be considered in order to ascertain the intent of the legislature. *See* Minn. Stat. § 645.16(5) (2014). In *State v. Maddaus*, the defendant was convicted of larceny for "cranking" a car and riding in it with an accomplice at the wheel for a distance of approximately 150 feet before a locked gas feed prevented them from going any further. 137 Minn. 249, 249–50, 163 N.W. 507, 507–08 (1917). The defendant challenged his conviction, arguing that there was no asportation, or carrying away, of the automobile. *Id.* at 250, 163 N.W. at 508. The Minnesota Supreme Court stated that "[t]he car ran a distance of at least 150 feet before it mounted the curb, and the evidence fails to show why it behaved thus. But clearly the car was moved a sufficient distance to constitute larceny." *Id.* While the *Maddaus* court was addressing the requirements of the common law crime of larceny, decades before the theft statute was enacted, this former law regarding theft of a motor vehicle provides further support for our conclusion that a person must move a motor vehicle in order to take it and be guilty of motor vehicle theft under Minn. Stat. § 609.52, subd. 2(a)(17).

Given the ambiguity of the term "takes" as it is used in Minn. Stat. § 609.52, subd. 2(a)(17), the principle of law that ambiguous criminal statutes should be strictly construed, the use of the term "takes" in other sections of Minn. Stat. § 609.52 and in Minn. Stat. § 609.529, which address theft of movable property crimes, and the former law, we

conclude that the term "takes" in this context requires that a person participate in the movement, however slight, of a motor vehicle.

## D E C I S I O N

Because the term "takes" in Minn. Stat. § 609.52, subd. 2(a)(17), requires that a person participate in the movement of a motor vehicle, the district court properly granted Thonesavanh's motion to dismiss for lack of probable cause.

**Affirmed.**