**STATE of Minnesota, Appellant,**

v.

**Somsalao THONESAVANH,
Respondent.**

**A15-1716**

Supreme Court of Minnesota.

Filed: September 6, 2017

Rehearing Denied October 12, 2017

Lori Swanson, Minnesota Attorney General, Saint Paul, Minnesota; and Kathleen A. Kusz, Nobles County Attorney, Travis J. Smith, Special Assistant County Attorney, Slayton, Minnesota, for appellant.

Mark D. Nyvold, Fridley, Minnesota, for respondent.

STRAS, Justice.

## OPINION

The question presented in this case is whether an individual may commit motor-vehicle theft without moving the vehicle. The district court dismissed the motor-vehicle-theft charge against respondent Somsalao Thonesavanh for lack of proba-

ble cause, concluding that the word "takes" in Minn. Stat. § 609.52, subd. 2(a)(17) (2016), required Thonesavanh to move the vehicle, something that indisputably did not occur in this case. The court of appeals affirmed. Because we conclude that an individual does not need to move a vehicle to "take" it, we reverse the decision of the court of appeals.

## FACTS

Early one winter morning, J.V. followed his normal morning routine by starting his car and leaving it running in his driveway before departing for work. Unlike most mornings, however, J.V. noticed a stranger, later identified by police as Thonesavanh, knocking on his front door. Due to the unusual time and circumstances of the visit, J.V. called 911. The officer who responded to J.V.'s call arrived to find Thonesavanh sitting in J.V.'s vehicle, with its doors locked and its rear lights illuminated. The officer eventually persuaded Thonesavanh to unlock the car doors and step out of the vehicle, at which point the officer placed him under arrest.

Thonesavanh was charged with, among other things, theft of a motor vehicle under Minn. Stat. § 609.52, subd. 2(a)(17). The district court dismissed the motor-vehicle-theft charge, holding that there was no evidence that Thonesavanh had either "take[n] or drive[n]" J.V.'s vehicle, one of which was necessary to convict Thonesavanh of motor-vehicle theft under Minn. Stat. § 609.52, subd. 2(a)(17). Relying on the common law of larceny, the court construed the word "takes" to require "asportation"—that is, a carrying away or movement—of the vehicle. *See, e.g., State v.*

*Madden,* 137 Minn. 249, 163 N.W. 507, 508 (1917). The court further concluded that the word "or" between "takes or drives" should be treated as creating a conjunctive relationship between the two words, requiring consideration together. This led the court to hold, as relevant here, that if "drives" requires movement, so does "takes."[1]

The court of appeals affirmed, but only after first concluding that the motor-vehicle-theft statute was ambiguous. *State v. Thonesavanh,* 880 N.W.2d 625, 629 (Minn. App. 2016). The court explained that "in the context of Minn. Stat. § 609.52, subd. 2(a)(17)," the word "takes" is "subject to more than one reasonable interpretation" because the statute does not define the term and multiple dictionary definitions exist. *Id.* at 628. It then resolved the ambiguity by relying on three interpretive canons. First, rather than treating the rule of lenity as a last resort, *see State v. Nelson,* 842 N.W.2d 433, 443 (Minn. 2014) (discussing the rule of lenity and holding that it applies only when a grievous ambiguity exists after exhausting the other canons of construction), the court relied on it first to adopt Thonesavanh's construction of the statute. *Thonesavanh,* 880 N.W.2d at 628-29. Second, it applied the whole-statute canon by considering other usages of the word "takes" in the theft statute. Because each of the other instances of the word "takes" in the theft statute contemplated movement, the court reasoned, the motor-vehicle-theft statute must also have such a requirement. *Id.* at 628. Third, drawing on a similar line of reasoning as the district court, the court of appeals reviewed the

---

1. The district court's logic suggests that it may have confused two distinct concepts: the grammatical conjunction and the interpretive canon *noscitur a sociis,* which means that a word is "known by its associates." *Cty. of Dakota v. Cameron,* 839 N.W.2d 700, 709 (Minn. 2013). Regardless, the word "or," in the manner it is used in this statute, is typically disjunctive, not conjunctive, contrary to the district court's reasoning. *State v. Bakken,* 883 N.W.2d 264, 268 (Minn. 2016) ("The word 'or' is typically read as disjunctive....").

common law of larceny, including *Madden*, which led it to conclude "that a person must move a motor vehicle in order to take it and be guilty of motor vehicle theft." *Id.* at 629. Accordingly, the court concluded that all three canons pointed in the same direction: toward affirming the dismissal of the motor-vehicle-theft charge due to the absence of any evidence that Thonesavanh moved J.V.'s vehicle.

## ANALYSIS

■■■■ This case requires us to determine the meaning of the word "takes" in the motor-vehicle-theft statute, Minn. Stat. § 609.52, subd. 2(a)(17), and specifically whether, to commit the offense, an individual must move the vehicle to "take" it. Determining the meaning of the word "takes" in the motor-vehicle-theft statute presents a question of statutory interpretation that we review de novo. *State v. Leathers*, 799 N.W.2d 606, 608 (Minn. 2011). The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72 (Minn. 2012). "A statute is ambiguous only if it is subject to more than one reasonable interpretation." *500, LLC v. City of Minneapolis*, 837 N.W.2d 287, 290 (Minn. 2013). If it is, then we may apply the canons of construction to resolve the ambiguity. *See Nelson*, 842 N.W.2d at 436.

### I.

■■■■ We begin our analysis with the text of the motor-vehicle-theft statute, which is part of a broader statute defining a variety of theft crimes, ranging from theft of cable-television services to theft of motor vehicles. *See* Minn. Stat. § 609.52 (2016). The specific provision governing motor-vehicle theft, Minn. Stat. § 609.52, subd. 2(a)(17), states in relevant part as follows:

(a) Whoever does any of the following commits theft . . .:

. . .

(17) *takes or drives* a motor vehicle without the consent of the owner or an authorized agent of the owner, knowing or having reason to know that the owner or an authorized agent of the owner did not give consent. . . .

Minn. Stat. § 609.52, subd. 2(a)(17) (emphasis added).

The offense created by the motor-vehicle-theft statute has three elements. The first element—the actus reus of the crime—is that the individual must "take[ ] or drive[ ] a motor vehicle." *Id.* The second element—an attendant circumstance—requires the actus reus to be accomplished "without the consent of the owner or an authorized agent of the owner." *Id.* The final element—the mens rea of the crime—is that a particular state of mind must accompany the taking or driving of the vehicle: knowledge or reason to know that "the owner or an authorized agent of the owner did not give consent." *Id.* The offense is complete once all three elements are met.

It is undisputed that J.V. did not provide consent for Thonesavanh to enter the car, much less for him to take or drive it. Thonesavanh also does not challenge, at least at this stage, the sufficiency of the evidence that he knew or had reason to know that his actions were done without J.V.'s consent. The only element on which the parties disagree is whether, when Thonesavanh entered J.V.'s car and locked the doors, he satisfied the actus-reus element of the crime: taking or driving the motor vehicle. The parties accurately frame the issue as whether adversely possessing a motor vehicle, even for a brief period, rises to the level of a taking under Minn. Stat. § 609.52, subd. 2(a)(17).

■ Despite defining a number of terms, including "motor vehicle" and "property," the theft statutes do not define "takes" or "drives." We therefore look to dictionary definitions to determine the common and ordinary meanings of these terms. *See Jaeger v. Palladium Holdings, LLC*, 884 N.W.2d 601, 605 (Minn. 2016). The word "drives," used as a transitive verb in the motor-vehicle-theft statute,[2] means "to guide, control, or direct (a vehicle)," *The American Heritage Dictionary of the English Language* 547 (5th ed. 2011), or "to operate the mechanism and controls and direct the course of (as a motor vehicle or speedboat)," *Webster's Third New International Dictionary* 692 (2002). Both of these definitions of the word "drives" contemplate movement.

The meaning of the word "takes," the primary focus of the parties' arguments, is less clear. *The American Heritage Dictionary* defines "take" in over 80 ways, 61 of which define the word as a transitive verb, its usage here. *The American Heritage Dictionary of the English Language* 1774-75 (5th ed. 2011). Some of the 61 definitions are plainly inapplicable, but at least two of them, both plausible in light of the remainder of the motor-vehicle-theft statute, appear to require movement: "to carry in one's possession" and "to convey by transportation." *Id.* Other definitions, also plausible, do not require movement, including "to seize with authority or legal right" and "to get possession of." *Id.* Equally nondefinitive is *Webster's Third New International Dictionary*, which has over 90 definitions of the word "take," some that contemplate movement and others that do not. *Compare Webster's Third New International Dictionary* 2330 (2002) (defining

"take" as "to convey, lead, carry, remove, or cause to go along to another place"), *with id.* at 2929 (defining "take" as "to get into one's hands or into one's possession, power, or control by force or stratagem"). None of the examples or explanations for "take" in either dictionary are helpful in determining which set of definitions—those with or without movement—better aligns with the text of the motor-vehicle-theft statute. Accordingly, we agree with the court of appeals that Minn. Stat. § 609.52, subd. 2(a)(17), as applied to the facts of this case, is ambiguous.

## II.

■ Having determined that the statute is ambiguous, we now turn to canons of construction to discern its meaning. *KSTP-TV v. Ramsey Cty.*, 806 N.W.2d 785, 788 (Minn. 2011). The application of three canons leads us to conclude that the better interpretation of the motor-vehicle-theft statute is the one advanced by the State: all that is required to "take" a motor vehicle is to adversely possess it. *See State v. Hayes*, 826 N.W.2d 799, 804-05 (Minn. 2013) (resolving an ambiguity by determining which interpretation of an ambiguous statute is "better").

■ The first canon, the canon against surplusage, is intrinsic because it depends solely on the words of the motor-vehicle-theft statute itself. As described above, the statute contains two transitive verbs that define the offense's actus reus: "takes" and "drives." The word "drives," in accordance with its common and ordinary meaning, requires movement, through "guid[ing], control[ling], or direct[ing]" the motor vehicle. *The American Heritage Dictionary*

---

2. A transitive verb is an action verb that requires one or more objects. *See The Chicago Manual of Style* ¶ 5.96 (16th ed. 2010). Here, the two verbs in the statute—"takes" and "drives"—modify the object "motor vehicle" and are therefore transitive. Minn. Stat. § 609.52, subd. 2(a)(17). Identifying whether these terms are used as transitive or intransitive verbs narrows the possible definitions of each term.

of the English Language 547 (5th ed. 2011). If we were to adopt a definition of "takes" that incorporates movement, such as "to convey by transportation," then the two transitive verbs in the statute would become entirely interchangeable with one another, each covering exactly the same actions as the other. Such a construction would violate the canon against surplusage, which favors giving each word or phrase in a statute a distinct, not an identical, meaning. See Shire v. Rosemount, Inc., 875 N.W.2d 289, 294 n.4 (Minn. 2016) (favoring a definition of a term, "voluntary," that gave it a distinct meaning from two other terms, "ordered" and "assigned," in the statute).

Standing alone, however, the canon against surplusage does not provide us with a definitive answer to the interpretive question presented by this case. Even under the broader definition of "takes" advanced by the State, the two verbs, "drives" and "takes," would substantially overlap with one another. Presumably, in the vast majority of cases in which an individual drives another person's motor vehicle without consent, the unauthorized driver, at some point, has adversely possessed the motor vehicle as well. Thus, although the two verbs do not become mirror images of one another under the State's interpretation, the broader verb, "takes," subsumes some of the conduct covered by the narrower verb, "drives." This overlap, which does not quite rise to the level of surplusage, requires examination of other canons of construction to ensure that the construction that creates

the least surplusage—the one advanced by the State—is in fact the better one. Compare Marx v. Gen. Revenue Corp., 568 U.S. 371, 133 S.Ct. 1166, 1177, 185 L.Ed.2d 242 (2013) (concluding that the canon against surplusage had "considerably less force" because "no interpretation [gave] effect to every word"), with Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is not positive repugnancy between two laws, a court must give effect to both." (citation omitted) (internal quotation marks omitted)).[3]

■ The second canon, in pari materia, is an extrinsic canon that applies only to ambiguous statutes. See State v. Lucas, 589 N.W.2d 91, 94 (Minn. 1999) ("Because neither statute is ambiguously worded, we have no need to use the doctrine of in pari materia in this instance."). Also called the related-statutes canon, in pari materia "allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language." Id. We have applied this canon in a variety of circumstances, ranging from construing a first-degree burglary statute together with a mandatory-minimum statute, State v. Herbert, 601 N.W.2d 210, 213 (Minn.App. 1999), to considering all statutes governing gambling together, Foley v. Whelan, 219 Minn. 209, 17 N.W.2d 367, 369 (1945). The rationale for the canon is that related stat-

---

**3.** Justice Anderson's concurrence relies on the canon against surplusage to conclude that the motor-vehicle-theft statute is unambiguous. According to the concurrence, interpreting "takes" to require movement would "create substantial overlap with 'drives'" because "motor vehicles are almost always moved by driving them." Although true, the concurrence fails to recognize that the converse ar-

gument is equally true: driving a motor vehicle is "almost always" the means of adversely possessing it. Accordingly, no matter which of the two interpretations of the word "takes" we adopt—the adverse-possession interpretation or the movement interpretation—some surplusage will exist, which requires us to examine other canons of construction to determine the statute's meaning.

utes, although separate, should be considered as "one systematic body [of] law." *State v. Bolsinger*, 221 Minn. 154, 21 N.W.2d 480, 486 (1946).

The Minnesota Criminal Code, Minn. Stat. ch. 609 (2016), defines a variety of crimes, but at least one other crime, simple robbery, has a common purpose and a similar subject matter to theft because both crimes involve the taking of personal property without the consent of the owner. *See* Minn. Stat. § 609.24 (defining simple robbery as, in relevant part, the "taking or carrying away" of property belonging to another by use or threat of force). In fact, we have explicitly held that theft is a lesser-included offense of robbery, *State v. Slaughter*, 691 N.W.2d 70, 77-78 (Minn. 2005), meaning that theft is a "lesser degree of the *same* crime," *State v. Dahlin*, 695 N.W.2d 588, 597 (Minn. 2005) (emphasis added) (citing Minn. Stat. § 609.04, subd. 1(1)); *see also* 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3 (2d ed. 2003) (describing common-law robbery as analogous to aggravated larceny). Given that theft and simple robbery are effectively two degrees of the same crime, they share the necessary common purpose and subject matter for application of the *in pari materia* canon.

■ Applying the *in pari materia* canon, our prior interpretation of the simple-robbery statute sheds light on the meaning of the word "takes" in the motor-vehicle-theft statute. Specifically, in *State v. Solomon*, we held that even temporary "control or dominion" over another's property was sufficient to "complete" the offense of simple robbery, even if there was no evidence that the defendant had "carr[ied] away" the property. 359 N.W.2d 19, 21 (Minn. 1984). According to *Solomon*, therefore, adverse possession, not movement, is required to "take[ ]" property under the simple-robbery statute. If the crimes of simple

robbery and theft are simply different degrees of the same crime, it would make little sense for us to ascribe one meaning to the word "takes" in the simple-robbery statute—adverse possession of property belonging to another—but an entirely different meaning to the same word in the motor-vehicle-theft statute—movement of the property. *See Hahn v. City of Ortonville*, 238 Minn. 428, 57 N.W.2d 254, 261 (1953) (interpreting the word "person" consistently across two "closely related" legislative acts because "[w]hen legislative acts involve a single subject or problem, there is an unusually strong reason for applying the rule of statutory construction that when statutes are *in pari materia* they are to be construed harmoniously and together"); *Foley*, 17 N.W.2d at 369 (ascribing an identical meaning to the word "game" in three separate gambling statutes that were *in pari materia* with one another). Indeed, holding to the contrary would violate a corollary of the *in pari materia* canon: "a legislative body generally uses a particular word with a consistent meaning in a given context." *Erlenbaugh v. United States*, 409 U.S. 239, 243, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972); *see also United States v. Freeman*, 44 U.S. (3 How.) 556, 556, 11 L.Ed. 724 (1845) ("[I]f it can be gathered from a subsequent statute *in pari materia* what meaning the legislature attached to the words of a former statute, this will amount to a legislative declaration of its meaning, and will govern the construction of the first statute.").

■ Third, the imputed-common-law-meaning canon explains that "[a] statute that uses a common-law term, without defining it, adopts its common-law meaning." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 320 (2012); *accord State v. Soto*, 378 N.W.2d 625, 628 (Minn. 1985) ("[T]his court may refer to common law rules as

an aid to construction or interpretation of the phrase as it is used in the . . . statute.").[4] Using the word "takes" in the context of a theft crime is not a new development. Rather, the common-law crime of larceny long had the requirement of "*taking*, and carrying away, of the personal goods of another." 4 William Blackstone, *Commentaries on the Laws of England* 230 (1765) (emphasis added). The common law referred to the first requirement as "caption" and the latter as "asportation." LaFave, *supra*, § 19.3(a)-(b). These two actus-reus requirements were evaluated as distinct, separate elements at common law. *Madden*, 163 N.W. at 508.

In *Madden*, we first addressed the "taking" element of larceny and defined it as the "adverse possession of the thing" and "independent, absolute control." *Id.* (citation omitted). We also addressed the other element, "carrying away," as requiring something both different and additional to a "taking": the movement of the property. *Id.* In *Madden*, which also involved a car, we held that a common-law larceny had occurred because "[t]he car ran a distance of at least 150 feet before it mounted a curb," but this conclusion was tied to our analysis of the "carrying away" element, not the "taking" element. *Id.*

The statute at issue here, the motor-vehicle-theft statute, has retained the framework of common-law larceny. *See* Minn. Stat. § 609.52, subd. 2(a)(17) (stating that one who "*takes or drives* a motor vehicle without the consent of the owner" commits theft (emphasis added)). To be sure, the statute has dispensed with the common-law requirement that an individual *both* take and carry away the property by using the disjunctive "or" between the two transitive verbs in the statute. But the common-law nomenclature remains. "Drives," which requires the car to be guided, controlled, or directed, has replaced the common-law "carried away" element. The adverse-possession element, "takes," remains the same. Given the common-law origins of the modern theft statute, the retention of the word "takes" to describe the actus-reus element of the offense indicates that we should define the term in accordance with its common-law meaning, consistent with the direction provided by the imputed-common-law-meaning canon.

Accordingly, we conclude that three canons, one intrinsic and two extrinsic, favor a construction of the word "takes" that requires adverse possession, not movement. Because this construction gives independent meaning to each word in the motor-vehicle-theft statute and reconciles it with the simple-robbery statute and the common law of larceny, we hold that to "take" a motor vehicle under Minn. Stat. § 609.52, subd. 2(a)(17), an individual must only adversely possess it.

## III.

In reaching a contrary conclusion, both the district court and the court

4.  In determining that the motor-vehicle-theft statute is unambiguous, Justice Anderson's concurrence also relies on the imputed-common-law-meaning canon. However, as we have recognized, this canon applies only if the "text is ambiguous." *Kratzer v. Welsh Cos., LLC*, 771 N.W.2d 14, 21 (Minn. 2009). The concurrence mistakenly relies on cases that invoke a different canon, the common-law-abrogation canon. *See, e.g., Binkley v. Allina Health Sys.*, 877 N.W.2d 547, 554-55 (Minn. 2016) (Lillehaug, J., concurring) (discussing application of the common-law-abrogation canon). In fact, in *Kratzer*, we specifically rejected the argument that the common law should inform our interpretation of the phrase "knowledge and consent" in an administrative rule because there was no "reason" to "look outside the plain language of the rule." 771 N.W.2d at 21. The concurrence's pre-ambiguity use of the imputed-common-law-meaning canon is inconsistent with *Kratzer*.

of appeals relied on the rule of lenity, a canon that requires a court to construe an ambiguous criminal statute in favor of the defendant. Relying on this canon, each court adopted Thonesavanh's construction of the motor-vehicle-theft statute: the word "takes" requires movement of the vehicle. Given the reliance on the rule of lenity by both courts that have considered the question presented in this case, we take this opportunity to reaffirm what we recently said in *State v. Nelson*: the rule of lenity applies only after the other canons of construction have been exhausted and what remains is a grievously ambiguous statute. 842 N.W.2d at 443. It is not, as some courts have suggested, some sort of grand canon that towers over all the others and allows a defendant to prevail in every instance in which a criminal statute is ambiguous.

▇▇▇▇ The rule of lenity, which the Supreme Court of the United States has remarked is as "old" as statutory "construction itself," *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820), "vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is not clearly prescribed," *United States v. Santos*, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). The canon, as its name would imply, directs courts to "favor a more lenient interpretation of a criminal statute." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 16, 131 S.Ct. 1325, 179 L.Ed.2d 379 (2011). Applying the rule of lenity here would require us to adopt Thonesavanh's construction of "takes"—the one requiring movement before completion of the offense of motor-vehicle theft—even though multiple other canons favor the State's competing adverse-possession construction. This we decline to do.

To be sure, there is some support for the notion, though limited, that a court can turn to the rule of lenity first, in lieu of, or in addition to, considering other canons of construction. *Santos*, 553 U.S. at 513, 128 S.Ct. 2020 (applying the rule of lenity ahead of other extrinsic aids of statutory construction, stating that "[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subject to them"); *State v. Rick*, 835 N.W.2d 478, 486 (Minn. 2013) (turning first to the rule of lenity to adopt the narrower of two interpretations). But the overwhelming weight of authority is that the rule of lenity is a canon of last resort, applicable "only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States v. Hayes*, 555 U.S. 415, 429, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009) (citation omitted) (internal quotation marks omitted); *see also Ocasio v. United States*, —— U.S. ——, 136 S.Ct. 1423, 1434 n.8, 194 L.Ed.2d 520 (2016) ("Th[e] rule applies only when a criminal statute contains a grievous ambiguity or uncertainty, and only if, after seizing everything from which aid can be derived, the Court can make no more than a guess as to what Congress intended." (citation omitted) (internal quotation marks omitted)); *State v. Jones*, 869 N.W.2d 24, 31 n.6 (Minn. 2015) (holding that "it is not necessary for us to reach the issue of whether and when to invoke the rule of lenity," and deciding to use other statutory canons ahead of the rule of lenity); *Nelson*, 842 N.W.2d at 443 (applying the rule of lenity as a last resort, only after exhausting the other canons of construction). Such a view is consistent not only with our most recent pronouncement on the subject, but also with the historical origins of the rule of lenity and its predominant use over time. *See, e.g., United States v. Corbett*, 215 U.S. 233, 243, 30 S.Ct. 81, 54 L.Ed. 173 (1909) (explaining

that the rule of lenity is not to be applied when it "distort[s]" the "meaning which is within the text"); *Wiltberger*, 18 U.S. at 95 (stating that although penal laws are to be construed strictly, the rule "is not to be so applied as to narrow the words of the statute to the exclusion of cases, which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend").

Although we have used the rule of lenity on a number of occasions, only once have we spoken to the timing of its application. In *Nelson*, we ultimately applied the rule of lenity to resolve an ambiguity in a child-support statute, but only after exhausting a number of other canons of construction, including *in pari materia*. 842 N.W.2d at 442-43. Then, relying on Supreme Court precedent, we articulated the rule as follows, leaving no doubt about the timing of its application: "the rule of lenity ... applies to the interpretation of criminal statutes when 'a grievous ambiguity or uncertainty in the statute' remains *after* we have considered other canons of construction." *Id.* at 443 (emphasis added) (quoting *Dean v. United States*, 556 U.S. 568, 577, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009)); *see also id.* at 454-55 (Lillehaug, J., dissenting) ("The rule of lenity should come 'into operation at the end of the process ..., not at the beginning....'" (citing *Callanan v. United States*, 364 U.S. 587, 596, 81

S.Ct. 321, 5 L.Ed.2d 312 (1961))). As the clearest—indeed the only—explicit holding on the timing of the application of the rule of lenity, *Nelson* controls here.[5]

Moreover, *Nelson* is consistent with the task of statutory interpretation and construction, which is to uncover a statute's meaning. *See, e.g., Rick*, 835 N.W.2d at 482 ("[I]f a statute is susceptible to more than one reasonable interpretation, then the statute is ambiguous and we may consider the canons of statutory construction to ascertain its meaning."). In this regard, the rule of lenity appears to be in a class of one among the canons of construction, because it dictates a result—the defendant wins—rather than unmasks the meaning of the statute itself. Indeed, strict application of the canon would render all other canons—both intrinsic and extrinsic—meaningless once a court has declared a criminal statute ambiguous.

This case provides a perfect example. Three canons, one intrinsic and two extrinsic, point toward a construction of the word "takes" that requires only adverse possession, not movement, yet application of the rule of lenity would require us to adopt the other construction, the one requiring movement, which is the far less reasonable alternative. As this case demonstrates, if we lived in a world in which the rule of lenity were a first resort, there would be no other canons.

---

5. Justice Anderson's concurrence embarks on a comprehensive survey of law-review articles and case law in search of "what the rule of lenity should be." To decide this case, however, we need not venture out in search of what the law *should be*, because we already know what the law *is* in Minnesota. *Nelson* firmly settled whatever uncertainty existed by holding that "the rule of lenity ... applies" only "after we have considered other canons of construction." 842 N.W.2d at 443. This discussion was part of *Nelson*'s holding; we construed the care-and-support statute in

the defendant's favor only after exhausting numerous other canons of construction, which is consistent with the general rule that we announced in that case. *Id.* Not only is there no "compelling reason" to overrule *Nelson*, but the parties here do not even urge us to do so. *Schuette v. City of Hutchinson*, 843 N.W.2d 233, 238 (Minn. 2014). In the end, therefore, this case involves nothing more than a routine application of existing precedent, even if the concurrence believes that adopting a different approach in *Nelson* would have been preferable.

Justice Anderson's concurrence, rather than adhering strictly to *Nelson's* explicit holding, would instead examine a *pattern* of decisions, observing that we have rarely declared a statute ambiguous in a criminal case and then ruled in favor of the State. Even aside from the fact that patterns do not create holdings—words do—the pattern relied upon by the concurrence is not a consistent one. On at least two occasions, we have determined that a criminal statute is ambiguous only to rule in favor of the State. *State v. Al-Naseer,* 734 N.W.2d 679, 683 (Minn. 2007); *State v. Sullivan,* 245 Minn. 103, 71 N.W.2d 895, 898 (1955). At most, therefore, the concurrence can claim that, *most* of the time, there *appears* to be a pattern that we rule in favor of criminal defendants once we determine that a statute is ambiguous. But such an approach to uncovering the law, just like applying the rule of lenity first, is not "appropriate." *See Abramski v. United States,* ____ U.S. ____, 134 S.Ct. 2259, 2272 n.10, 189 L.Ed.2d 262 (2014) (declining to apply the rule of lenity when "context, structure, history, and purpose" resolved all ambiguity, because the simple fact that the "statute's text, taken alone, permits a narrower construction" is "not the appropriate test" for when to apply the rule).

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed and remanded.

Concurring, Anderson, J., Gildea, C.J.

Concurring, Chutich, J.

**CONCURRENCE**

ANDERSON, Justice (concurring).

I agree that the motor-vehicle-theft statute does not require movement of the vehicle and, therefore, I would reverse the court of appeals. But I depart from the court's reasoning because the text of the statute is unambiguous and the rule of lenity need not be applied as the court applies it.

I.

First, I address the text of the statute. As relevant here, the motor-vehicle-theft statute states that any person who "takes or drives a motor vehicle without the consent of the owner" commits theft. Minn. Stat. § 609.52, subd. 2(a)(17) (2016). Thonesavanh argues that "takes" is ambiguous as to whether a person must move the vehicle to commit theft. The court agrees with Thonesavanh, but I do not.

We construe statutory language according to its plain and ordinary meaning. *State v. Struzyk,* 869 N.W.2d 280, 284 (Minn. 2015). The word "take" has many definitions. *See The American Heritage Dictionary of the English Language* 1774-75 (5th ed. 2011) (defining "take" over 80 ways). Although some definitions require carrying or moving, *see id.* at 1774 ("4a. To carry in one's possession"), most definitions focus on possession or control, *see id.* ("1. To get in one's hands, control, or possession ... 6. To make use of or select for use ... 8. To accept, receive, or assume"). We have said that simply "[b]ecause a word has more than one meaning does not mean it is ambiguous." *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.,* 517 N.W.2d 888, 892 (Minn. 1994). Instead, "only if more than one meaning applies within that context does ambiguity arise." *Id.* Therefore, when a word had two definitions, but one would create redundancy in the statute, we held that the statute unambiguously used the definition that did not make the statute redundant. *Id.*

Here, interpreting "takes" to require movement would not make "drives" redundant because motor vehicles can be moved without being driven, such as by towing or pushing them. Nevertheless, because motor vehicles are almost always moved by driving them, interpreting "takes" to require movement would create substantial overlap with "drives." Therefore, interpreting "takes" to not require movement is the more natural reading of the statute.

Our case law also supports the conclusion that "takes" does not require movement. The motor-vehicle-theft statute at issue here is similar to common law larceny.[1] At common law, larceny required three elements: (1) trespass, (2) taking and carrying away the property, and (3) property that belongs to another person. 3 Wayne R. LaFave, *Substantive Criminal Law* §§ 19.2-19.4 (2d ed. 2003). "Taking" and "carrying away" were treated as two distinct elements. *Id.* § 19.3(a)-(b). Although "carrying away" required movement, "taking" did not. *Id.*

For example, in *State v. Madden*, the defendant argued that he could not be convicted of larceny of a motor vehicle because "he never exercised complete control or dominion over the thing taken, and that there was no asportation of the automobile." 137 Minn. 249, 163 N.W. 507, 508 (1917). In other words, he argued that he

neither took nor carried away the vehicle. We rejected both arguments. *Id.* We discussed the two arguments separately, first addressing the "taking" element by saying, "[t]he control or dominion over the automobile did not last long, but we do not see why it was not complete and absolute for a time." *Id.* In the next paragraph, we separately addressed the argument "that there was no 'carrying away' ... based on the idea that defendant and his companion were unable to get farther than they did[.]" *Id.* We concluded, "clearly the car was moved a sufficient distance to constitute larceny." *Id.*

Our analysis in *Madden* establishes that at common law, the "carrying away" element of larceny required movement, but the taking element did not. We presume that the Legislature was aware of the common law when it drafted the criminal code and did not intend to modify it except to the extent expressly declared or clearly indicated in the statute. *See Ly v. Nystrom*, 615 N.W.2d 302, 314 (Minn. 2000). Therefore, by requiring only taking or driving, the motor-vehicle-theft statute unambiguously does not require carrying away—that is, it does not require movement.

## II.

Because I conclude that "takes" unambiguously does not require movement, I

---

1. The court argues that we can look to the common law only after we determine that a statute is ambiguous. But we have previously considered the common law without first concluding that the statute was ambiguous. *See, e.g., Binkley v. Allina Health Sys.*, 877 N.W.2d 547, 555 (Minn. 2016) (Lillehaug, J., concurring) (stating that the presumption that statutes are consistent with the common law "typically is applied before we determine whether a statute is ambiguous"); *Dahlin v. Kroening*, 796 N.W.2d 503, 505 (Minn. 2011) (considering the common law without mentioning whether the statute was ambiguous); *State v. Soto*, 378 N.W.2d 625, 627 (Minn.

1985) (relying on the common law as an "aid of statutory construction" without concluding that the statute was ambiguous). As to the comment the court makes that *all* extrinsic canons can be applied only after concluding that the statute is ambiguous, this broad issue is not before the court today and is therefore dicta. *See State ex rel. Foster v. Naftalin*, 246 Minn. 181, 74 N.W.2d 249, 266 (1956) ("Dicta ... generally is considered to be expressions in a court's opinion which go beyond the facts before the court and therefore are the individual views of the author of the opinion and not binding in subsequent cases.").

would not reach the rule of lenity issue. *See State v. Peck*, 773 N.W.2d 768, 772 (Minn. 2009) ("When the statutory language is not ambiguous, we do not apply the rule of lenity."). Nevertheless, because the court reaches the issue, I will address it here.

The court concludes that the rule of lenity applies only as a last resort—after all other canons of construction are exhausted and a grievous ambiguity remains. We have at times described the rule this way. *State ex rel. Duncan v. Roy*, 887 N.W.2d 271, 278 n.7 (Minn. 2016) ("[T]he rule of lenity should be used to resolve ambiguity in criminal statutes when a grievous ambiguity or uncertainty in the statute remains after this court has considered other canons of statutory construction." (citation omitted) (internal quotation marks omitted)); *State v. Nelson*, 842 N.W.2d 433, 443 (Minn. 2014) (stating that the rule of lenity applies "when 'a grievous ambiguity or uncertainty in the statute' remains after we have considered other canons of statutory construction" (quoting *Dean v. United States*, 556 U.S. 568, 577, 129 S.Ct. 1849, 173 L.Ed.2d 785 (2009))).

On the other hand, in several other cases our analysis suggests that we have previously applied the rule of lenity without exhausting the other canons of construction. For example, in *State v. Stevenson*, 656 N.W.2d 235, 238-39 (Minn. 2003), we were presented with three different possible interpretations of the statute. We rejected one interpretation, concluding that it would frustrate the legislative intent. *Id.* at 239. But that left us with two remaining possible interpretations. *Id.* We applied the rule of lenity to adopt the narrower interpretation. *Id.* Notably, we mentioned that it might have been possible to decide which interpretation to adopt based on a vagueness analysis and the canon of constitutional avoidance, but we

concluded that, "[i]n light of our holding on lenity grounds[,] ... we need not address the issue of vagueness." *Id.* at 639 n.2.

In *State v. Maurstad*, we said that, "when the language of a criminal law is ambiguous, we construe it narrowly according to the rule of lenity." 733 N.W.2d 141, 148 (Minn. 2007). We decided that the statute was ambiguous, recognized that the choice between two interpretations was a "close call," and ruled in favor of the defendant, concluding that "all reasonable doubt concerning legislative intent should be resolved in favor of the defendant." *Id.* at 150 (quoting *State v. Colvin*, 645 N.W.2d 449, 452 (Minn. 2002)). The dissent in *Maurstad* objected to this analysis, arguing that "[t]he rule of lenity applies only if, after seizing everything from which aid can be derived, we can make no more than a guess as to what [the Legislature] intended." *Id.* at 155 (Gildea, J., dissenting) (quoting *Muscarello v. United States*, 524 U.S. 125, 138, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998)). Specifically, the dissent argued that we should have considered "commission policy and official commission interpretation" before applying the rule of lenity. *Id.* (quoting *State v. McGee*, 347 N.W.2d 802, 805-06 (Minn.1984)).

Even when we have described the rule of lenity as one of last resort, we have rarely ruled against the defendant when presented with an ambiguous criminal statute. *See, e.g., Nelson*, 842 N.W.2d at 444; *State v. Rick*, 835 N.W.2d 478, 485-87 (Minn. 2013) (holding that the communicable-disease statute was ambiguous, and ruling for the defendant based on the rule of lenity and relevant legislative history); *State v. Leathers*, 799 N.W.2d 606, 611 (Minn. 2011) (ruling for the defendant in light of an ambiguous criminal statute based on the doctrine of *in pari materia* and the rule of lenity). The court cites only two instances in which we have ruled

against a defendant when a criminal statute was ambiguous. First, in *State v. Sullivan*, we held that there was "some ambiguity" in the statute and we resolved that ambiguity in favor of the State by reading the statute as a whole. 245 Minn. 103, 71 N.W.2d 895, 900 (1955). But because we never discussed the rule of lenity, *Sullivan* is of little help here. Second, in *State v. Al-Naseer*, we were presented with five possible interpretations of the statute: two that the State supported, one that the district court applied, one that the defendant advocated, and one that the court of appeals applied. 734 N.W.2d 679, 684 (Minn. 2007). Although the court is correct that we ruled in favor of the State because we accepted one of the State's proposed interpretations, we did not adopt the least defendant-friendly of the options. *Id.* at 685-89. In fact, we used the rule of lenity to reject the more extreme interpretation supported by the State. *Id.* at 685-86.

Because our case law is not clear or consistent about what the rule of lenity *is*, it is appropriate to consider here what the rule of lenity *should be*. There are two issues regarding how the rule of lenity applies. The first issue is when in relation to other methods of statutory interpretation the rule of lenity applies. There are four possible options. First, the rule of lenity could apply whenever there is *any* ambiguity in a criminal statute. *See* Zachary Price, *The Rule of Lenity As A Rule of Structure*, 72 Fordham L. Rev. 885, 894 (2004) (describing this option but concluding that it "has not been clearly articulated in judicial opinions"). Under this approach, the court would look neither to canons of construction nor legislative history to attempt to resolve the ambiguity before applying the rule of lenity. Second, the rule of lenity could apply after our traditional canons of construction but before resorting to legislative history. *See United States v. R.L.C.*, 503 U.S. 291, 307, 112 S.Ct. 1329,

117 L.Ed.2d 559 (1992) (Scalia, J., concurring) ("In my view it is not consistent with the rule of lenity to construe a textually ambiguous penal statute against a criminal defendant on the basis of legislative history."). Third, the rule of lenity could function as one factor to consider equal to the other interpretive aids. *See White v. State*, 318 Md. 740, 569 A.2d 1271, 1274 (1990) ("[A]s a principle of statutory construction, [the rule of lenity] should be used like other principles of statutory construction as an aid in ascertaining legislative intent with respect to a statutory offense.... [L]ike other canons of statutory construction, the rule of lenity is neither absolute nor exclusive."). Unlike the other three approaches, applying the rule of lenity does *not* always result in a ruling in the defendant's favor. Finally, the rule of lenity could apply absolutely last—only if ambiguity remains after resorting to both canons of construction and legislative history. *See Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (stating that the rule of lenity applies "after resort to 'the language and structure, legislative history, and motivating policies' of the statute" (quoting *Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980))). The court seems to have adopted this latter approach.

The second issue concerns the level of ambiguity that must exist for the court to apply the rule of lenity. The Supreme Court of the United States has supplied at least four different answers to this question. First, the Court has applied the rule of lenity only when "there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 139, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) (citations omitted) (internal quotation marks omitted). Second, the Court has applied the rule of lenity only when a pro-

posed interpretation "can be based on no more than a guess as to what Congress intended." *Ladner v. United States*, 358 U.S. 169, 178, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958). Third, the Court has applied the rule of lenity whenever "a reasonable doubt persists about a statute's intended scope." *Moskal*, 498 U.S. at 108, 111 S.Ct. 461. Finally, the Court has described the rule of lenity as applying whenever the interpretive tools "fail to establish that the Government's position is unambiguously correct." *United States v. Granderson*, 511 U.S. 39, 54, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994). These varying articulations of when the rule of lenity applies are not merely different ways of saying the same thing—the outcome of a particular case often depends on which formulation of the rule the Court employs. *See* Daniel Ortner, *The Merciful Corpus: The Rule of Lenity, Ambiguity and Corpus Linguistics*, 25 B.U. Pub. Int. L.J. 101, 105 (2016).

We need not decide here which option for either of these issues is best. I point out only that the court has arguably chosen the least defendant-friendly option for both the rule of lenity's position among other interpretive aids and the amount of ambiguity that must exist for the rule of lenity to apply. The result is a rule of lenity that will rarely apply.

Although I would not adopt a particular option, it is important to understand that there are sound reasons to adopt a more robust rule of lenity than the rule apparently adopted by the court. For example, courts have long recognized that the rule of lenity ensures that criminal defendants have notice that their behavior could subject them to criminal prosecution. *See United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22, 73 S.Ct. 227, 97 L.Ed. 260 (1952) (describing the rationale behind the rule of lenity by saying, "when choice has to be made between two

readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite"). Even if defendants do not read the statute before they act, the fact remains that if they wanted to do so, they could learn what the law prohibits. *See McBoyle v. United States*, 283 U.S. 25, 27, 51 S.Ct. 340, 75 L.Ed. 816 (1931). Furthermore, a robust rule of lenity requires legislators to draft statutes more clearly. Price, *supra*, at 911-12. This in turn allows voters to hold legislators accountable for the legislation they pass. *Id.* at 911.

The rule of lenity also prevents judicial usurpation of the legislature's role. *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971) ("[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity."). Separation of powers dictates that only the legislative branch can create new crimes. *See State v. Noggle*, 881 N.W.2d 545, 547 (Minn. 2016) ("The Minnesota Legislature has the 'exclusive' authority to define crimes and offenses and the range of the sentences or punishments for their violation.'" (quoting Minn. Stat. 609.095(a) (2014))); *State v. S.L.H.*, 755 N.W.2d 271, 278 (Minn. 2008) ("[O]ur separation of powers jurisprudence requires that we give 'due consideration' to the 'equally important executive and legislative functions.'" (citation omitted)). By construing ambiguity in favor of the criminal defendant, we ensure that the courts do not accidentally create crimes that the Legislature never intended.

Applying the rule of lenity as the court does guts it of its power and loses all of these benefits. We have many canons of

construction. *See, e.g., Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W.2d 236, 244 (Minn. 2016) (describing last-antecedent canon); *Cty. of Dakota v. Cameron*, 839 N.W.2d 700, 709 (Minn. 2013) (describing noscitur a sociis canon); *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 74 (Minn. 2012) (explaining that words and phrases with a special meaning are construed according to the special meaning); *State v. Zais*, 805 N.W.2d 32, 40 n.4 (Minn. 2011) (describing the plural includes the singular); *Leathers*, 799 N.W.2d at 611 (describing *in pari materia*); *In re Welfare of J.B.*, 782 N.W.2d 535, 543 (Minn. 2010) (describing *expressio unius est exclusio alteris*); *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 435 (Minn. 2009) (describing the singular includes the plural); *ILHC of Eagan, LLC v. Cty. of Dakota*, 693 N.W.2d 412, 419 (Minn. 2005) (describing canon against surplusage); *Gomon v. Northland Family Physicians, Ltd.*, 645 N.W.2d 413, 416 (Minn. 2002) (describing the canon against retroactivity); *Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 278 (Minn. 2000) (describing canon against absurd results or unjust consequences); *Correll v. Distinctive Dental Servs., P.A.*, 607 N.W.2d 440, 446 (Minn. 2000) (explaining that the latter enacted of two irreconcilable statutes prevails); *id.* at 445-46 (explaining that the specific provision prevails over the general provision); *In re Linehan*, 594 N.W.2d 867, 874 (Minn. 1999) (describing canon of constitutional avoidance). In a given case, after analyzing all of these canons, and perhaps other canons not mentioned here, it is unlikely to the point of improbability that any ambiguity will remain. Thus, by applying lenity last, the court essentially decides that lenity never applies.

In short, our case law has been inconsistent about when the rule of lenity should be applied. I depart from the court's analysis today because the court overlooks sound policy reasons to adopt a robust rule of lenity. But ultimately, because I conclude that the statute is unambiguous, the discussion of the rule of lenity is unnecessary and I therefore concur with the court's result.

GILDEA, Chief Justice (concurring).

I join in the concurrence of Justice Anderson.

## CONCURRENCE

CHUTICH, Justice (concurring).

Because I agree that, under the plain language of the motor-vehicle-theft statute, Minn. Stat. § 609.52, subd. 2(a)(17) (2016), "takes" is unambiguous and does not require movement, I join in Part I of the concurrence of Justice Anderson. Given this determination, consideration of the rule of lenity is unnecessary. I therefore do not join in Part II of Justice Anderson's concurrence.