CHUTICH, Justice.
In this appeal, we consider whether the Commissioner of Revenue ("the Commissioner") properly invoked her alternative-apportionment authority under Minnesota Statutes section 290.20, subdivision 1 (2016), and if so, what burden the Commissioner bears when using that authority. Respondents Associated Bank, N.A., and its affiliates ("the Bank"), which include the members of two Wisconsin limited liability companies (LLCs), objected to the Commissioner's assessment of additional state corporate franchise tax liability for tax years 2007 and 2008. Although the Bank correctly calculated the tax owed based on the relevant statutes for apportioning income to Minnesota, the Commissioner concluded that the method used did not "fairly reflect" the Bank's income from Minnesota sources under section 290.20, subdivision 1. Accordingly, the Commissioner invoked her authority under section 290.20, subdivision 1, and applied an alternative apportionment method that she contends fairly reflects the Bank's income allocable to Minnesota.
After exhausting its administrative remedies, the Bank appealed to the tax court, arguing that the Commissioner improperly invoked her authority under section 290.20, subdivision 1. Relying on our decision in HMN Financial, Inc. v. Commissioner of Revenue , 782 N.W.2d 558 (Minn. 2010), the tax court agreed with the Bank and reversed the Commissioner's order. Because we conclude that HMN Financial is not dispositive and that the Legislature plainly gave the Commissioner the authority to use an alternative apportionment method under the circumstances presented here, we reverse and remand.
FACTS
The parties have stipulated to the underlying facts. During 2007 and 2008, Associated *397 Bank, N.A. ("Associated Bank"), was a nationally-chartered bank headquartered in Wisconsin, operating as a wholly-owned subsidiary of Associated Banc-Corp, a bank holding company. Associated Bank had banking locations in Wisconsin, Illinois, and Minnesota, as well as loan-production offices in other states.
In September 2007, Associated Banc-Corp created two LLC[1] partnerships under Wisconsin law: Associated MN Commercial RE, LLC ("Commercial LLC") and Associated MN Retail RE, LLC ("Retail LLC"). It is undisputed that Associated Banc-Corp created the two LLCs to minimize the Minnesota corporate franchise tax liability of the LLCs' members.
Each LLC had two members, and each member transferred either a loan portfolio or money to the LLC to secure its partnership interest. Associated Bank and ASBC Investment Corporation ("ASBC"), a wholly-owned subsidiary of Associated Bank, became members of Commercial LLC. Associated Bank exchanged its entire Minnesota commercial loan portfolio (consisting of commercial loans, consumer loans, and construction loans worth $1.359 billion) for a 99-percent interest in Commercial LLC. ASBC paid $13.7 million for a 1-percent interest in Commercial LLC.
Retail LLC also had two members: Associated Minnesota Real Estate Corporation ("MN Real Estate") and Associated Bank.[2] MN Real Estate transferred its Minnesota retail loan portfolio (consisting of residential home loans worth $707 million) in exchange for a 99-percent interest in Retail LLC. Associated Bank paid $7.1 million for the remaining 1-percent interest in Retail LLC.
Transferring the loans to the LLCs did not change the management of the loans, except that new reports were generated to track the loan portfolios. The loans continued to be secured by tangible or real property located in Minnesota, and to the extent that any loans were unsecured, the borrowers had Minnesota mailing addresses. After the loans were transferred to the LLCs, the loans earned nearly $28 million in interest income during the remaining months of 2007 and another $114.6 million in interest income in 2008.
Minnesota imposes a tax on the taxable income of businesses, including the Bank,[3] that "engage in contacts with [Minnesota] that produce gross income attributable to [Minnesota]." Minn. Stat. § 290.02 (2016). When a taxpayer conducts business in Minnesota and other states, the combined income is allocated to each state through "an apportionment formula that generates a fair share of the combined income attributable to each state for tax purposes."
*398 Kimberly-Clark Corp. v. Comm'r of Revenue , 880 N.W.2d 844, 846 (Minn. 2016) ; see Minn. Stat. § 290.17, subd. 3 (2016) ; Caterpillar, Inc. v. Comm'r of Revenue , 568 N.W.2d 695, 696-97 (Minn. 1997).
The income of a multi-state unitary business,[4] such as the Bank, is apportioned to Minnesota by using a method, or "formula," prescribed by Minnesota Statutes section 290.191 (2016). The applicable apportionment method depends on the type of entity.[5] See generally Minn. Stat. § 290.191. In 2007 and 2008, for a "financial institution," a three-factor formula apportioned net income by accounting for: (1) sales or receipts, which included loan interest; (2) property, which included the value of intangible property, such as loans; and (3) payroll. Minn. Stat. § 290.191, subds. 3, 6, 11. Non-financial entities used the "[a]pportionment formula of general application," another three-factor formula, accounting for: (1) sales, (2) property, and (3) payroll.[6] Id. , subds. 2, 5, 9-10, 12. Accordingly, loan-interest receipts and intangible property were not accounted for in the general apportionment formula. See id. ; see also id. , subd. 6(f)-(i) (accounting for "[i]nterest income" only when determining the receipts factor for financial institutions).
The parties agree that, in 2007 and 2008, each LLC member was a "financial institution," but each LLC was not, and therefore different apportionment methods applied to the members and the LLCs under section 290.191. Specifically, the general apportionment formula applied to the LLCs and the financial-institution apportionment formula applied to the members. Because the LLCs were not financial institutions, the LLCs, unlike the members, did not have to include certain interest income in calculating their taxable net income using the general apportionment formula.[7] As a result, each LLC reported zero receipts, zero property, zero payroll, and an overall apportionment factor of zero on its 2007 and 2008 Minnesota partnership tax returns.[8] In turn, the LLCs reported zero apportionment factors to *399 their members, Associated Bank, ASBC, and MN Real Estate.[9]
The Bank, including the members of the LLCs, then filed combined Minnesota Corporation Franchise Tax Returns for 2007 and 2008.[10] In the returns, the Bank apportioned income to Minnesota by calculating apportionment factors for each member of the LLCs-Associated Bank, MN Real Estate, and ASBC. Each member combined its apportionment factor (from the financial-institution apportionment formula) with its share of its LLC's apportionment factor of zero (from the general apportionment formula), as required by Minnesota Statutes section 290.17, subdivision 4(j) (2012) (requiring "the entire net income of the unitary business" to be "apportioned among the entities by using each entity's Minnesota factors for apportionment purposes").[11] The Bank's sales factors therefore excluded the interest earned from the Minnesota loans held by the LLCs, and the Bank's property factors excluded the value of the LLCs' Minnesota loans. As intended, the resulting income allocable to Minnesota excluded all of the Bank's interest income from the LLCs' Minnesota business activities.
The Commissioner subsequently audited the Bank and issued a Notice of Change in Tax. The Commissioner found that applying the general apportionment formula to the LLCs-the method prescribed under section 290.191-did not "fairly reflect" the Bank's "taxable net income allocable" to Minnesota because applying the prescribed formula to the LLCs failed to account for the Bank's Minnesota business activities. The result of using the prescribed formula, the Commissioner concluded, distorted the Bank's income by failing to report "Minnesota sourced income" that should have been allocated to the State.
Accordingly, the Commissioner invoked her authority under section 290.20, subdivision 1, and applied an alternative apportionment method to correct that distortion of reported income by accounting for the Bank's interest income from Minnesota loans. Specifically, the Commissioner recalculated apportionment at the LLC level by including interest income and loan values from the LLCs' Minnesota loans in the "receipts factor" and the "property factor"-income that was not included in the general apportionment formula for non-financial institutions. She then incorporated, on a pro-rata basis, each member's share of the LLCs' "receipts factor" and "property factor" into the Bank's apportionment percentages. In effect, the Commissioner's alternative apportionment method treated the LLCs, which were not financial institutions, as financial institutions.
Based on the recalculation of net income, the Commissioner assessed the Bank approximately $2.16 million and $2.78 million in additional corporate franchise tax for 2007 and 2008, respectively. Following an administrative appeal, the Commissioner upheld the audit determination, *400 explaining that the general apportionment formula, although correctly applied, excluded interest earned from Minnesota loans and the value of those loans, which resulted in a "distortion" of the taxpayer's taxable net income allocable to Minnesota, not a fair reflection of that income. In contrast, the Commissioner concluded, the alternative apportionment method applied during the audit fairly reflected the Bank's net income allocable to Minnesota.
The Bank appealed to the tax court. The case was submitted to the tax court for decision based on stipulated facts and an agreed upon set of exhibits. Agreeing with the Bank, the tax court concluded that the Commissioner could not exercise her authority under section 290.20 in the manner that she did. Associated Bank, N.A. v. Comm'r of Revenue , No. 8851-R, 2017 WL 1430657, at *6-7 (Minn. T.C. Apr. 18, 2017). Explaining that it was "bound" by our decision in HMN Financial , id. at *6 n.52, the tax court concluded that the Commissioner failed to rebut the statutory presumption under section 290.20, subdivision 1, that the prescribed apportionment methods in section 290.191"fairly and correctly" apportioned the Bank's net income to the State, id. at *6-7. The tax court therefore held that the Commissioner had impermissibly used an alternative apportionment method to determine the Bank's Minnesota tax liability. It further explained that the Commissioner could not "look through or disregard the taxpayers' corporate structure" to apply the financial-institution apportionment formula to the LLCs. Id. at *6. Doing so, the tax court reasoned, "circumvent[ed] Minn. Stat. § 290.191 and HMN Financial " because the Commissioner merely objected to the resulting reduction in the Bank's tax liability rather than the apportionment method used by the Bank. Id. at *7.
The Commissioner appeals from the tax court's decision.
ANALYSIS
"Our review of the tax court's decision is limited and deferential." Minn. Energy Res. Corp. v. Comm'r of Revenue (MERC I) , 886 N.W.2d 786, 792 (Minn. 2016). "We review tax court decisions to determine whether the tax court lacked subject matter jurisdiction, whether the tax court's decision is supported by evidence in the record, and whether the tax court made an error of law." Hohmann v. Comm'r of Revenue , 781 N.W.2d 156, 157 (Minn. 2010) ; see Minn. Stat. § 271.10, subd. 1 (2016). We review the tax court's factual findings for clear error, MERC I , 886 N.W.2d at 792, and "[w]e uphold a tax-court ruling when there is sufficient evidence in the record for the tax court to reasonably reach its conclusion," HMN Fin. , 782 N.W.2d at 563. "But we review the tax court's legal conclusions-including interpretations of statutes-de novo." HMN Fin. , 782 N.W.2d at 563.
I.
We first consider whether HMN Financial , our last decision addressing Minnesota Statutes section 290.20, supports the tax court's conclusion that the Commissioner cannot exercise authority under this statute when the taxpayer has applied the apportionment formulas prescribed by section 290.191 of the Minnesota Statutes. We conclude that HMN Financial is distinguishable from this case and did not preclude the Commissioner from exercising her alternative-apportionment authority under section 290.20 here.
In HMN Financial , we considered whether the Commissioner had the general authority to adjust the taxpayer's Minnesota tax liability by disregarding the *401 taxpayer's corporate structure.[12] 782 N.W.2d at 564-71. The taxpayer's corporate structure, which allowed the taxpayer to exclude the income of one entity and report a substantial deduction for "deemed dividends," provided "considerable" tax benefits. Id. at 562. Determining that the taxpayer's corporate structure lacked "economic substance" and "business purpose," the Commissioner disregarded the structure and assessed the taxpayer an additional $2.5 million in corporate franchise tax. Id. at 560-61.
On appeal, the Commissioner argued that four different statutory provisions, including section 290.20, "taken together," provide "a broad grant of authority to close statutory tax loopholes." Id. at 567 (summarizing the Commissioner's argument). The taxpayer asserted that although the "statutes cited by the Commissioner ... grant ... some discretion" to the Commissioner, the statutory authority could only be applied in "specific situations." Id. at 565-66. We rejected the notion that "the amorphous authority" allegedly "created by a series of other statutes" allowed the Commissioner to disregard the taxpayer's statutory compliance. Id. at 567.[13]
Concerning the Commissioner's specific authority under section 290.20, we stated:
Minnesota Statutes § 290.20, subd. 1, by its plain language, includes a presumption that a taxpayer has "fairly and correctly" determined its Minnesota taxable income if that taxpayer used the reporting methods outlined in section 290.191. Section 290.20, subdivision 1, conditions any authority granted to the Commissioner on "the methods prescribed by section 290.191" failing to fairly reflect taxable net income in Minnesota.
Id. We held that the Commissioner could not rely on the authority provided by section 290.20 because the Commissioner made no "attempt to rebut the presumption that [the section 290.191 ] methods produce fair and correct results." Id. We explained that the Commissioner could not simply "take issue with the result rather than the methods" applied by the taxpayer to apportion its taxes. Id.
Although we recognize that the facts of HMN Financial resemble the facts here in some respects, we conclude that HMN Financial does not preclude the Commissioner's use of the alternative-apportionment authority here. The Commissioner in HMN Financial relied on section 290.20 as an example of general implicit statutory authority to impose tax obligations according to the economics of the transaction. See id. Here, the Commissioner relies on section 290.20 as specific authority to use an alternative apportionment method because, the Commissioner asserts, the prescribed apportionment formula under section 290.191 does not "fairly reflect" the taxpayer's taxable net income allocable to Minnesota and the alternative method does so. Minn. Stat. § 290.20, subd. 1.
*402 In other words, the Commissioner now exercises plain statutory authority to challenge the apportionment method used, not merely the results of the applied method. See HMN Fin. , 782 N.W.2d at 567. Because the Commissioner seeks to rebut the presumption that the method the Bank used produced fair and correct results, we conclude that HMN Financial does not constrain our analysis here.
II.
We next consider what the Commissioner must demonstrate to exercise her authority to apply an alternative apportionment method under section 290.20.
Minnesota Statutes section 290.20, subdivision 1, provides:
The methods prescribed by section 290.191 shall be presumed to determine fairly and correctly the taxpayer's taxable net income allocable to this state. If the methods prescribed by section 290.191 do not fairly reflect all or any part of taxable net income allocable to this state, the taxpayer may petition for or the commissioner may require the determination of net income by the use of another method, if that method fairly reflects net income. These other methods may include:
(1) separate accounting;
(2) excluding any one or more of the factors;
(3) including one or more additional factors; or
(4) some other method.
We interpret statutes to "ascertain and effectuate" the Legislature's intent. Minn. Stat. § 645.16 (2016). "If the Legislature's intent is clear from the statute's plain and unambiguous language, then we interpret the statute according to its plain meaning without resorting to the canons of statutory construction." State v. Struzyk , 869 N.W.2d 280, 284-85 (Minn. 2015) (citation omitted) (internal quotation marks omitted). "When the words of a law in their application to an existing situation are clear and free from all ambiguity," Minn. Stat. § 645.16, "our role is to enforce the language of the statute and not explore the spirit or purpose of the law," Christianson v. Henke , 831 N.W.2d 532, 537 (Minn. 2013) (citation omitted) (internal quotation marks omitted). This case presents issues of first impression, which we review de novo. HMN Fin. , 782 N.W.2d at 563 (explaining that we review the tax court's legal conclusions and interpretations of statutes de novo).
Section 290.20 creates a presumption that the apportionment methods in section 290.191"fairly and correctly" determine the taxpayer's taxable net income allocable to Minnesota. Minn. Stat. § 290.20, subd. 1. Because the Commissioner invoked the alternative-apportionment authority under section 290.20, subdivision 1, the Commissioner bears the burden to overcome this presumption.[14] See C.O. v. Doe , 757 N.W.2d 343, 352 (Minn. 2008) ("The general rule is that the burden of proof rests on the party seeking to benefit from [the] statutory provision."); see also Microsoft Corp. v. Franchise Tax Bd. , 39 Cal.4th 750, 47 Cal.Rptr.3d 216, 139 P.3d 1169, 1178 (2006) (explaining that as the party invoking the alternative apportionment method, the taxing authority has the burden *403 of proving that its alternative method is reasonable).
A.
We first consider the Commissioner's burden to overcome the presumption that the Bank's apportionment formula "fairly and correctly" reflects its taxable net income allocable to Minnesota. Section 290.20, subdivision 1, provides that "the methods prescribed by section 290.191 shall be presumed to determine fairly and correctly the taxpayer's taxable net income allocable to this state."
This language is plain and clear: the taxpayer's use of the apportionment formula authorized by section 290.191"shall be presumed" to result in a fair and correct determination of the taxpayer's taxable net income allocable to Minnesota. Minn. Stat. § 290.20, subd. 1 ; see Minn. Stat. § 645.44, subd. 16 (2016) (" 'Shall' is mandatory."). But this presumption is rebuttable. See Minn. Stat § 290.20, subd. 1 ("If the methods prescribed by section 290.191 do not fairly reflect all or any part of taxable net income allocable to this state, ... the commissioner may require the determination of net income by the use of another method...."); cf. Minn. Energy Res. Corp. v. Comm'r of Revenue (MERC II) , 909 N.W.2d 569, 573 (Minn. 2018) (explaining that a "rebuttable presumption is an inference drawn from certain facts that establish a prima facie case, which may be overcome by the introduction of contrary evidence" (citation omitted) (internal quotation marks omitted) (alteration omitted) ). In other words, the Commissioner must accept the results of the taxpayer's apportionment under section 290.191 unless the Commissioner rebuts the presumption established by section 290.20, subdivision 1.
To rebut this presumption, the Commissioner must present substantial evidence that the taxpayer's apportionment method does not "fairly reflect all or any part of taxable net income allocable" to Minnesota, and that an alternative method does so. Minn. Stat. § 290.20, subd. 1 ; see also Conga Corp. v. Comm'r of Revenue , 868 N.W.2d 41, 53 (Minn. 2015) ("When a taxpayer presents substantial evidence that the Commissioner's assessment order is invalid or incorrect, the presumption of validity is overcome, and the case is decided by the trier of fact the same as if the presumption had never existed." (citation omitted) (internal quotation marks omitted) ). To be "substantial," evidence must be "credible." Court Park Co. v. County of Hennepin , 907 N.W.2d 641, 644 (Minn. 2018) (citation omitted) (internal quotation marks omitted).
To use an alternative apportionment method under section 290.20, subdivision 1, the Commissioner need not show, as the Bank urges, that the general apportionment formula "results in a grossly inequitable allocation." The Bank cites to Pacific Mutual Door Co. v. James for this argument. See 465 N.W.2d 696, 699 (Minn. App. 1991) (citing Walgreen Co. v. Comm'r of Taxation , 258 Minn. 522, 104 N.W.2d 714, 720 (1960) ). Pacific Mutual relied on our decision in Walgreen Co. v. Commissioner of Taxation , which involved a constitutional challenge to the Commissioner's use of an apportionment formula that differed from the taxpayer's preferred apportionment method. See Walgreen Co. , 104 N.W.2d at 720. Recognizing the "discretion ... vested in the commissioner to determine" which formula "fairly and properly reflects the net income attributable to Minnesota," we held that the taxpayer bore the burden to show that the Commissioner's alternative apportionment method resulted in a "grossly inequitable and invalid" allocation of income under the Due Process Clause of the Fourteenth Amendment *404 to the United States Constitution. Id. at 720. Notably, the statute at issue established no presumptions about the taxpayer's chosen method. See id. at 717 (citing Minn. Stat. § 290.19, subd. 1 (1949) ).
Because this case does not involve a constitutional challenge to an applied apportionment method, we do not apply the "grossly inequitable" standard to the Commissioner's decision to use an alternative apportionment method. See Walter Hellerstein & John A. Swain, State Taxation ¶ 9.20[3][a] (3d ed. 2017) (distinguishing between constitutional challenges and statutory burdens is "sound as a matter of statutory construction and tax policy"). We consider only whether the Commissioner presented substantial evidence to show that the Bank's allocation of taxable net income, using methods prescribed by section 290.191, did not fairly reflect the Bank's taxable net income allocable to Minnesota and the alternative method does so.
B.
We next review whether the Commissioner presented substantial evidence of the two elements required to overcome the presumption that the method the Bank used fairly reflected its taxable net income: (1) proof that the applicable section 290.191 apportionment method does not "fairly reflect all or any part" of the taxpayer's taxable net income, and (2) proof that the Commissioner's alternative method "fairly reflects" that income. See Minn. Stat. § 290.20, subd. 1.
The Commissioner must first present substantial evidence that "the methods prescribed by section 290.191 do not fairly reflect all or any part of [the Bank's] taxable net income allocable" to Minnesota. Id. The Bank argues that the Commissioner failed to rebut the statutory presumption because she did not show that the prescribed apportionment method for non-financial institutions did not "fairly reflect" the LLCs' income. Rather, the Bank asserts that "the Commissioner's purported rebuttal of the presumption is nothing more than an objection to how the statute operates when a partnership is owned by financial institutions."
Section 290.20, subdivision 1, does not define the phrase "fairly reflect." See also Minn. Stat. § 290.01 (2016). Accordingly, we turn to the common meaning of the words. Minn. Stat. § 645.08 (2016) (requiring us to construe "words and phrases ... according to rules of grammar and according to their common and approved usage"); Jaeger v. Palladium Holdings, LLC , 884 N.W.2d 601, 605 (Minn. 2016). "Fairly" can mean "to the full degree or extent," or "in conformity with the evidence, with reason, or with one's merits" and "in a just or lawful manner." Webster's Third New International Dictionary 816 (2002); see also The American Heritage Dictionary of the English Language 634 (5th ed. 2011) (defining "fairly" as "[i]n a fair or just manner; equitably" and "[l]egitimately; suitably," or "[a]ctually; fully"). Although the definitions "[i]n a fair or just manner," "[l]egitimately; suitably," and "in conformity with the evidence, with reason, or with one's merits," describe the merits or accuracy of something, the definitions "to the full degree or extent" and "[a]ctually; fully" describe scope or degree.
In the context of section 290.20, subdivision 1, "fairly" must refer to scope or degree, rather than merits or accuracy. We reach this conclusion based on the separate uses of "fairly" in section 290.20, subdivision 1. Along with using "fairly" in "fairly reflect," the Legislature also used "fairly" in conjunction with "correctly" in the presumption clause. See Minn. Stat. § 290.20, subd. 1. Interpreting "fairly" in "fairly reflect" to refer to merits or accuracy *405 would make "correctly" in "fairly and correctly" superfluous. See Minn. Stat. § 645.17 (2016) (stating that "the legislature intends the entire statute to be effective and certain"); Allan v. R.D. Offutt Co. , 869 N.W.2d 31, 33, 35 (Minn. 2015) (interpreting a statute so that "no word, phrase, or sentence [is] deemed superfluous, void, or insignificant" (citation omitted) (internal quotation marks omitted) ).
The adverb "fairly" qualifies the verb "reflect." See Minn. Stat. § 290.20, subd. 1. "Reflect" means "to produce a result" or "to show." See Webster's Third New International Dictionary 1908 (2002) (defining "reflect" as "to bring or cast as a result," or "to make manifest or apparent as a likely cause, plausible conditioning factor, fitting background element, or concomitant : show"); see also The American Heritage Dictionary of the English Language 1477 (5th ed. 2011) (defining "reflect" as "[t]o make apparent; express or manifest," or "[t]o bring as a consequence").
"Reflect" is used as a transitive verb,[15] and its object is "all or any part of [the Bank's] taxable net income allocable" to Minnesota. Minn. Stat. § 290.20, subd. 1. The plain language makes clear that the relevant "taxable net income" is the taxable net income of the taxpayer . Id. ("The methods prescribed by section 290.191 shall be presumed to determine fairly and correctly the taxpayer's taxable net income allocable to this state." (emphasis added) ). The Commissioner must therefore consider whether the prescribed method fairly reflected the Bank's income, not the LLCs' income.
Consequently, the Commissioner must present substantial evidence that the method prescribed under section 290.191 does not show, to a full degree or extent, all or any part of the taxpayer's income arising from taxable business activities in Minnesota. This interpretation effectively preserves the Legislature's presumption that the apportionment methods prescribed by section 290.191 fairly and correctly allocate taxable net income, while giving effect to the plain language in section 290.20 that authorizes the Commissioner to apply an alternative apportionment method in limited circumstances.
Applying this interpretation, we conclude that the Commissioner presented substantial evidence that the apportionment method applied by the Bank did not fairly reflect a part of the Bank's taxable net income allocable to Minnesota. Specifically, the general apportionment formula failed to show any of the Bank's income from the LLCs' Minnesota business activities. The stipulated facts and the tax court's findings of fact established: (1) the Bank held partnership interests in the LLCs; (2) the LLCs held "portfolios of loans secured by Minnesota real estate"; (3) "[t]he loan transfers resulted in no change in the management of the loans, except that new reports were generated to track the portfolios"; (4) "Associated Bank remained the mortgagee of record for all Minnesota loans held by [the LLCs], and borrowers made loan payments directly to Associated Bank, as the collection agent for [the LLCs]"; (5) "[f]rom September 12, 2007 through the end of 2007, Retail LLC's loans earned $10,728,355 in interest income and Commercial LLC's loans earned $17,173,108 in interest income"; and (6) "[i]n 2008, Retail LLC's loans earned $41,881,147 in interest income and Commercial LLC's loans earned *406 $72,804,316 in interest income." Associated Bank , 2017 WL 1430657, at *1.
Additionally, as the stipulated facts conclusively show, all of the interest income that the LLCs earned in 2007 and 2008 was attributable to the Minnesota loans, but each LLC reported zero sales, gross earnings, or receipts using the prescribed apportionment method. These findings support the conclusion that applying the general apportionment formula at the LLC level did not fairly reflect the Bank's taxable net income allocable to Minnesota because under that method the Bank showed no taxable income arising from the partnerships' contacts with Minnesota.
Next, the Commissioner must present substantial evidence to show that the alternative apportionment method "fairly reflects net income." Minn. Stat. § 290.20, subd. 1. Such methods "may include: (1) separate accounting; (2) excluding any one or more of the factors; (3) including one or more additional factors; or (4) some other method."Id.
Here, in apportioning the Bank's income under an alternative method, the Commissioner included each LLC member's pro-rata share of its LLC's receipts and intangible property in the Bank's apportionment calculation. The Commissioner asserts that this method "fairly reflects net income" because it fully shows the net income that the Bank received from the LLCs' Minnesota business activities. Based on the stipulated facts, exhibits, the order of the Commissioner, and the tax court's findings, we agree.
The Commissioner has therefore overcome the statutory presumption. The Bank disagrees. The Bank maintains that the Commissioner's alternative apportionment method is not "another method that fairly reflects net income" because (1) the applied method, which was the financial-institution apportionment formula under section 290.191, could not be applied to the LLCs because the LLCs were not financial institutions; and (2) "another method" under section 290.20, subdivision 1, must be a method other than those provided by section 290.191.[16] We conclude otherwise.
The language of section 290.20, subdivision 1, is broad and allows the Commissioner to use "another method," including "some other method," so long as the selected method "fairly reflects net income." Nothing in this broad language restricts the Commissioner from using other statutory apportionment methods. In other words, section 290.20 does not preclude the use of the financial-institution apportionment formula for entities that are not financial institutions. The only restriction is that the Commissioner use "another method," which is a method that is different from the method used by the taxpayer and prescribed under section 290.191. See The American Heritage Dictionary of the English Language 74 (5th ed. 2011) (defining "another" in this context as "[d]istinctly different from the first").
Here, the alternative method applied by the Commissioner-accounting for the LLC members' pro-rata shares of the LLCs' receipts and intangible property-is "another method" because it is not the method applied by the taxpayer under *407 section 290.191. Accordingly, we reject the Bank's challenge to the alternative apportionment method that the Commissioner used to "fairly reflect[ ] net income." Minn. Stat. § 290.20, subd. 1.
Based on the stipulated facts and the absence of any other evidence, we conclude (1) that the tax court erred as a matter of law in concluding that the Commissioner could not exercise the alternative-apportionment authority here, and (2) that the tax court's decision is not in conformity with the evidence. See Minn. Stat. § 271.10, subd. 1 (stating that our review is limited, in relevant part here, to deciding whether "the order of the Tax Court was not justified by the evidence or was not in conformity with law, or that the Tax Court committed any other error of law").
CONCLUSION
For the foregoing reasons, we reverse the decision of the tax court, and we remand the case to the tax court to vacate its order for judgment, to enter a judgment consistent with this opinion, and for such further proceedings as are consistent with this opinion.
Reversed and remanded.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

An LLC "is a business entity organized in the United States under state law." I.R.S. Publication 3402 at 1 (June 24, 2016). "An LLC may be classified for federal income tax purposes as a partnership, corporation, or an entity disregarded as separate from its owner...." Id. "An LLC with at least two members is classified as a partnership for federal income tax purposes." Id. at 2. For purposes of Minnesota's corporate franchise tax, LLCs and partnerships are treated in the same way that they are treated for federal income tax purposes. See Minn. Stat. § 290.01, subds. 3, 3b (2016).

MN Real Estate was a real estate investment trust (a "REIT") organized under Wisconsin law. All of MN Real Estate's common stock was owned by Associated Minnesota Investment Corporation, a wholly-owned subsidiary of Associated Bank.

The Bank is the taxpayer here, not the LLCs. Partnerships, including LLC partnerships, file partnership tax returns, but do not pay tax on the partnership income. See Minn. Stat. § 290.31, subd. 1 (2016). Instead, the partnership income flows through the partnership entities to members, such as Associated Bank, which pay the tax. See id.

The parties stipulated that the LLCs were also engaged in the Bank's "unitary business." "The term 'unitary business' means business activities or operations which result in a flow of value between them. The term may be applied within a single legal entity or between multiple entities and without regard to whether each entity is a sole proprietorship, a corporation, a partnership or a trust." Minn. Stat. § 290.17, subd. 4 (2016).

The apportionment formulas are applied at the entity level for combined reporting purposes. See Minn. Stat. § 290.17, subd. 4(h) (stating that "the entire net income of the unitary business determined in accordance with this subdivision is apportioned among the entities by using each entity's Minnesota factors " (emphasis added) ).

After 2013, the general apportionment formula only considers the sales factor and not the property and payroll factors. See Minn. Stat. § 290.191, subd. 2(b) (2016) (presenting a timetable for the factors considered by taxable year).

The Legislature has since substantially revised the definition of "financial institution." See Act of May 30, 2017, ch. 1, art. 1, § 4, 2017 Minn. Laws 1st Spec. Sess. 1017, 1023-25 (codified at Minn. Stat. § 290.01, subd. 4a (2016) ). As revised, a "corporation or other business entity that is more than 50 percent owned" by certain other entities classified as financial institutions (including banks) is defined as a financial institution, "effective for taxable years beginning after December 31, 2016." Id. ; see also Minn. Stat. § 290.01, subd. 4a(7). Under current law, therefore, it is possible for a partnership to be classified as a financial institution.

The Commissioner did not challenge the LLCs' partnership returns or the apportionment methods used for those returns; rather, the Commissioner challenged the calculation of the taxable net income allocable to Minnesota for the LLCs' members.

The Bank never petitioned the Commissioner to use a different method. See Minn. Stat. § 290.20, subd. 1 (allowing a taxpayer to "petition for" the use of an alternative method to apportion income).

Associated Bank was the "designated filer" on the Bank's combined Minnesota tax returns for the years at issue.

Each member followed Minnesota Department of Revenue notices in reporting its income to the State. See Minn. Dep't of Revenue Notices No. 92-16 (June 29, 1992) and No. 08-03 (Feb. 19, 2008) (instructing corporate members in a unitary business to include in their own income a pro-rata share of the partnership's income, as well as the member's pro-rata share of the partnership's sales, property, and payroll factors in the corporate member's own factors).

The taxpayer in HMN Financial had adopted a "captive REIT" structure, which is a business structure "in which a corporation owns [a] holding company, which in turn owns a real estate investment trust." 782 N.W.2d at 560 & n.1. A "REIT" is a "real-estate investment trust," which is an entity "that may receive income from only particular real-estate interests, including mortgages." Id. at 561. A REIT pays out most of its income to its shareholders as dividends. Id.

We also rejected the Commissioner's argument that the common law provides "broad authority to tax according to substance rather than form" and was therefore a separate basis allowing her to disregard the taxpayer's business structure. HMN Fin. , 782 N.W.2d at 570-71.

Typically, the taxpayer bears the burden to overcome the presumed validity of a Commissioner order. See Minn. Stat. § 271.06, subd. 6(a) (2016) ("[T]he order of the commissioner ... in every case shall be prima facie valid."); Conga Corp. v. Comm'r of Revenue , 868 N.W.2d 41, 53 (Minn. 2015) ("The presumptive validity of the assessment order imposes on the taxpayer the burden of going forward with evidence to rebut or meet the presumption [in Minn. Stat. § 271.06, subd. 6(a) ].").

"A transitive verb is an action verb that requires one or more objects." State v. Thonesavanh , 904 N.W.2d 432, 436 n.2 (Minn. 2017) (citing The Chicago Manual of Style ¶ 5.96 (16th ed. 2010) ).

The Bank also argues that the Commissioner cannot overcome the statutory presumption because she only presented evidence showing gross income from Minnesota sources and no evidence showing how much net income was earned from Minnesota sources. The Bank did not make this argument before the tax court and the tax court decided the case on stipulated facts and exhibits; therefore, it is not properly before our court. See Thiele v. Stich , 425 N.W.2d 580, 582 (Minn. 1988) (holding that arguments and theories not raised in the trial court are not reviewable on appeal).